IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BUFFALO BIODIESEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| LIFECYCLE RENEWABLES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Buffalo Biodiesel, Inc., by its attorney Patrick M. Balkin, Esq. as and for its

Complaint against Defendant, Lifecycle Renewables, Inc., hereby states and alleges as follows:

### SUMMARY OF ACTION

The action brought by Buffalo Biodiesel, Inc. ("BBD hereinafter") concerns theft and

tortious interference activities by Defendant Lifecycle Renewables, Inc. ("Lifecycle hereinafter").

BBD is engaged in the business of purchasing Waste Vegetable cooking oil ("WVCO hereinafter")

and, in turn, processing and selling the oil to be converted into biofuel.  Lifecycle has engaged in

unauthorized conversion  of the WVCO from BBD's equipment including vats,  containers and

drums, which are typically  located outside and behind BBD's suppliers' premises. As a result,

when BBD goes to collect the WVCO  the containers are empty and BBD cannot pay the suppliers

for any  WVCO. After stealing  from the same containers for a period of time, Lifecycle  will

approach BBD's supplier and induce the supplier to breach its contract with BBD. The suppliers

are  willing to breach their contracts with BBD because Lifecycle as lied to suppliers, (1)

misrepresented to suppliers or potential suppliers the meaning of a Attorney General Assurance of

Discontinuance to harm BBD's  reputation  ("AOD hereinafter"), and/or (2) have not been paid by

BBD for their WVCO because Lifecycle has been stealing the WVCO. As a result of Lifecycle's unlawful activities and outright theft of BBD's WVCO, BBD has lost, upon information and belief, in excess of a One Million dollars ($1,000,000.00) to Lifecycle over the last few years.

## THE PARTIES

1.     BBD is a New York corporation having a principal place of business at 17 Court Street, Buffalo, New York 14202.

2.     Lifecycle is a Massachusetts corporation having a principal place of business at 75 Industrial Avenue, Tewksbury, Massachusetts 01876.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because BBD and Lifecycle are citizens of different states and the matter in controversy has a value greater than $75,000, exclusive of interest and costs.

4.     This Court is a proper venue for this action pursuant to 28 U.S.C. §1391(b) because Plaintiff resides in this judicial district, a substantial part of the events giving rise to the claim occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

## FACTUAL BACKGROUND

5.     As part of its business, BBD contracts with suppliers to service and remove waste vegetable cooking oil ("WVCO") from restaurants and other locations. Attached hereto as **EXHIBIT 1** is a representative standard contract package BBD executes with suppliers.

6.     BBD and its suppliers enter into contracts reflecting the terms and conditions of the parties' relationship with respect to WVCO produced by the suppliers' businesses. This includes, but is not limited to, the following terms and conditions:

i.      Seller agrees to make available exclusively to BBD for collection, and BBD agrees to collect, all WVCO generated on Seller's premises at each collection site identified on this Agreement;

ii.     This Agreement will remain in effect for a period of Five (5) years commencing on the Contract Date. The Agreement will automatically renew for a period of one (1) year on the last day of such initial term and each anniversary of the Contract Date thereafter unless either party gives written notice to the other of their intention not to renew;

iii.    Within 90 days of this Agreement being countersigned, BBD will provide suitable containers for WVCO at the Collection Site(s) in a sufficient number to accept all WVCO generated there, unless Seller requests and BBD agrees to the use of an alternative method of storing WVCO for collection:

iv.     Collect all WVCO from its Containers or the Alternative Containers in accordance with all applicable laws and regulations. After collection, BBD will assume responsibility and liability for the safe transport of the WVCO in accordance with all US Department of Transportation requirements and/or applicable laws.

v.      By its execution of this Agreement, and in consideration of [ a sales price negotiated contract by contract] variable rate of sale with Supplier at $xxx per gallon and other good and valuable consideration, Seller hereby assigns to BBD ownership and all of its rights, title and interest in and to all WVCO generated, produced, and/or collected at any and all of its Collection Sites during the term of this Agreement (including any renewal term).

vi.     Seller agrees to make space available for the exclusive placement on its premises of oil collection equipment by BBD, will not allow another collector's equipment to be placed or to remain on its premises. Seller will take any and all steps necessary to have any other collector's equipment removed that may be present as of the Contract Date.

vii.    Seller will not allow another collector to collect WVCO from its premises during the term of this Agreement (including renewal).

*See* Exhibit 1.

7.      Pursuant to its contracts, BBD provides its Suppliers with collection vats, tanks or drums for WVCO. Although BBD places the WVCO vats, tanks or drums on its suppliers' premises, BBD retains ownerships of its vats, tanks or drums that it provides to its suppliers.

8.      At all relevant times, BBD had a contractual relationship, existing business relationship, and expectancy of a profitable, probable continuation of business relationship with various suppliers locations in numerous locations in Michigan, Ohio, Pennsylvania, New York, New Jersey and Connecticut, among other suppliers in the Northeast United States.

9.     Upon information and belief, Lifecycle had knowledge of BBD's contractual relationships, business relationships and expectancies with these restaurants and hospitality locations (suppliers) by hiring or paying former BBD employees who subsequently improperly sold or transferred information on said contractual relations and business relationships to the Lifecycle.

10.     When BBD has an existing contractual or business relationship with a supplier, BBD's WVCO vats, tanks or drums  appears visibly on the premises of the Supplier's business and are clearly marked with BBD's ownership. It is well known in the industry of WVCO collection that there is a contract of business relationship with a supplier business if a WVCO-processing company's collection equipment is located at the supplier business. This is one, non-exhaustive way, Defendant knew of BBD's existing contracts and business relationships referenced above.

11.     With the increased demand and price of biofuel over the last five to ten years, waste vegetable cooking oil has become valuable and more operators have attempted to enter the industry. The majority of these companies do not have the initial capital to operate at a large scale to compete with larger companies such as BBD, Darling International, Inc., Western Mass Rendering Co., Baker Commodities, etc.

12.     As a result, many of these operators have attempted to enter the industry by stealing the WVCO from other companies' containers. To do so, the thieves carry tools to cut through anti-theft equipment and use a pump to remove the stolen oil out of the containers into a transport vehicle that has some sort of a container in the back of their van, truck, or etc..

13.     Many of these thieves have been arrested for stealing the WVCO from BBD. However, these prosecutions to date have not served as a serious deterrent to future thefts. Overall, there have been 118 arrests in connection with BBD oil thefts.

14.    The widespread theft that occurs throughout the industry has caused, and continues to cause, significant harm to BBD. In 2022, thefts of WVCO amounted to lost revenue of over Fifteen Million Dollars ($15,000,000.00). This includes an average of 268 thefts per month across over three thousand locations. Losses in 2023 and 2024 are expected to exceed Forty Five Million ($45,000,000.00) . As of the date of this complaint, there have been more than Three Thousand (3,000.00) WVCO thefts in 2024.

**Lifecycle's scheme to steal from BBD, defraud BBD's customers, interfere with BBD's supplier relationships and fraudulently induce BBD's suppliers to breach their BBD contracts.**

15.    On August 28th, 2024, Buffalo Biodiesel Inc. received correspondence from Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker Donelson") representing Defendant Lifecycle. Baker Donelson alleged that an "authorized agent and purchasing representative . . . made intentional misrepresentations in order to misappropriate Lifecycle's client contracts, including those previously held by Green Earth Biodiesel, which was recently acquired by Lifecycle." Attached hereto as **EXHIBIT 2** is the August 28th, 2024 correspondence.

16.    BBD converted 12 accounts that had their WVCO collected by Green Earth to suppliers. Each of the suppliers entered into a valid and enforceable contract with BBD that included a 'Verification of Non-Interference with Previous Used Cooking Oil Collection Contract.' By executing this form, each supplier attested and affirmed that they had no existing contract with another WVCO collection company. *See* Exhibit 1 which includes the sample form 'Verification of Non-Interference with Previous Used Cooking Oil Collection Contract.'

17.    Upon information and belief, Green Earth did not utilize written contracts to outline a binding, exclusive, contractual relationship. Rather, Green Earth only had a written right of entry agreement allowing for the collection of oil from suppliers' properties.

18.     Upon information and belief, Green Earth stopped operating and sold routes to Lifecycle. However, this sale did not include contracts as Green Earth did not utilize them. Upon information and belief Lifecycle then began to collect WVCO from locations on Green Earth's route lists.

19.     Baker Donelson purported in it's August 28th, 2024 correspondence that Lifecycle had contracts with the suppliers obtained from Green Earth, but later could not produce any physical proof of such contracts, admitting that they were all verbal and had no enforceable contractual beginning and end dates of their purported contractual agreements.

20.     On August 29th, 2024, BBD sent a cease-and-desist notice to Lifecycle. BBD included over forty-four (44) suppliers who executed a written contract for the exclusive collection of their used Waste Vegetable oil that Lifecycle had interfered with. Attached hereto as **EXHIBIT 3** is the August 29th, 2024 correspondence.

21.     All of the following suppliers had valid and binding contracts with BBD that Lifecycle interfered with:

- 30 Burgers, 903 High St, Hackettstown, New Jersey 07840.
- Angelo's Franklin Diner, 428 State Route 23 North, Franklin, New Jersey 07416.
- Athena Gyro, 1167 Route 55, Lagrangeville, New York 12540.
- Bodega Munchies, 139 Main St, Bloomingdale, New Jersey 07403.
- Burrini's Olde World Market, 1204 Sussex Turnpike, Randolph, New Jersey 07869.
- Carmel Haifa, 682 Speedwell Ave, Morris Plains, New Jersey 07906.
- Carmela's Restaurant and Pizzeria, 1021 NY-17K, Montgomery, New York 12549.
- Chano's Latin Kitchen, 574 Newark Pompton Ave, Pompton Plains, New Jersey 07444,.
- Charlotte's Web, 39 West Clinton St, Dover, New Jersey 07801.
- Chef's Diner, 127 Jefferson St, Stamford, Connecticut 06902.
- Citrus Café, 436 Route 52, Woodburne, New York 12788.
- Como Dice el Dicho, 269 Middle Turnpike W, Manchester, Connecticut 06040.
- Crust N Fire, 51 Kings Hwy E, Haddonfield, New Jersey 08033
- Crust N Fire, 112 W Main St, Maple Shade, New Jersey 08052.
- Crust N Fire, 175 Rte. 70, Medford, New Jersey 08055.
- Crust N Fire, 439 Larchmont Blvd, Mount Laurel, New Jersey 08054.
- Crust N Fire, 12109 Town Center Blvd, Voorhees Township, New Jersey 08043.
- Curst N Fire, 200 NJ-73 Unit N4B, West Berlin, New Jersey 08091.
- Dan Zai Ramen & Sushi House, 299 US Rte. 22 East, Green Brook Township, New Jersey 08812.

- Dao Madison Chinese, 258 Main Street, Madison, New Jersey 07940
- De Novo European Pub, 275 Bellevue Ave, Montclair, New Jersey 07043.
- Godavari, 128 Talmadge Rd, Edison, New Jersey 08817.
- Flame House, 7930 Bustleton Ave, Philadelphia, Pennsylvania 19152.
- Good Friends Diner, 188 Farmington Ave, Bristol, Connecticut 06010.
- Joe & Joe Restaurant, 65 E Central Ave, Pearl River, New York 10965.
- Landing Market, 190 Mt Arlington Blvd, Landing, New Jersey 07850.
- Kilim Mediterranean Restaurant, 645 Kinderkamack Road, River Edge, New Jersey 07661.
- Lovey's Pizza & Grill, 91 W Hanover Ave, Morris Plains, New Jersey 07950.
- Mack's, 300 Wanaque Ave, Pompton Lakes, New Jersey 07442.
- Marcello's Pizzeria, 268 Springfield Ave, Berkeley Heights, New Jersey 07922.
- Montclair Diner, 613 Valley Rd, Montclair, New Jersey 07043.
- Mr. Wonton 88, 1588 Union Valley Rd, West Milford, New Jersey 07480.
- Nawab Grill & Halal Meat, 371 Georges Rd, Dayton, New Jersey 08810.
- North Brunswick Pub, 1864 US Route 1 North, North Brunswick, New Jersey 08902.
- Pickett's Village Bar, 2208 Milburn Ave, Maplewood, New Jersey 07040.
- Pizzeria Mandara, 319 Franklin Ave, Wyckoff, New Jersey 07481.
- Plated Modern American Bistro, 2425 New York Ave, Hopewell Junction, New York 12533.
- Sheimer's Deli, 3110 NJ-10, Denville, New Jersey 07834.
- Sit N Chat Diner, 289 Route 23, Sussex, New Jersey 07461.
- Sorriso Kitchen, 252 Main St, Chatham, New Jersey 07928.
- The Corner Bistro, 477 NJ-10, Randolph, New Jersey 07834.
- The Pizza Pub, 395 Dover Chester Rd, New Jersey 07845.
- Tony and Nick's Steaks, 39 E Oregon Ave, Philadelphia, Pennsylvania 19148.
- Zio Gino, 650 Shunpike Rd, Chatham, New Jersey 07928.

22.    Upon information and belief, all of the suppliers in paragraph 21 above had waste vegetable oil stolen from the BBD containers on their premises for numerous months while in a binding, valid and enforceable contract with BBD.

23.    Lifecycle knew that the suppliers in paragraph 21 above were under contract with BBD because clearly labeled BBD' Vats, containers or drums were on the suppliers' premises.

24.    Each of the suppliers in paragraph 21 above had large fluctuations in the amount WVCO available for BBD to collect before being fraudulently induced into attempting to breach and terminate their contracts with BBD.  Upon information and belief, such large fluctuations in the suppliers WVCO were caused solely due to Lifecycle stealing the WVCO.

25.    On September 11th, 2024, BBD responded to Lifecycle's August 28th, 2024, correspondence. Of note, the correspondence stated,

> If you check with your client Lifecycle Renewables, Inc., I believe you will find that Green Earth Biodiesel, LLC never had contracts with any of its clients. It was allegedly one of Green Earth's selling points. All of our clients sign forms indicating that they do not have a contractual relationship with any other WVCO provider.

Attached hereto as **EXHIBIT 4** is the September 11th, 2024 correspondence.

26.    On September 19th, 2024, BBD wrote to Lifecycle regarding tortious interference with a contract signed by BBD with Nawab Grill & Halal Meat ("Nawab Grill"). Specifically, Lifecycle removed BBD's 350-gallon VAT at 371 Georges Road, Dayton, NJ 08810. Attached hereto as **EXHIBIT 5** is the September 19th correspondence.

27.    On or about April 12th, 2022, BBD and Nawab Grill entered into a valid and enforceable contract under which BBD would be the exclusive collector of Nawab Grill's WVCO for a term of not less than five (5) years.

28.    On or about August 12th, 2024, BBD received a letter – on Lifecycle's letterhead – notifying BBD that Lifecycle entered into a service agreement with Nawab Grill.

29.    On or about September 15th, 2024, BBD visited the premises at Nawab Grill and found its VAT missing. The owner of Nawab Grill stated that Lifecycle removed the VAT and placed their own in its place.

30.    Nawab Grill was included in BBD's cease-and-desist letter dated September 6th, 2024. *See* Exhibit 2.

31.    On September 27th, 2024, Baker Donelson responded on behalf of Lifecycle to BBD's correspondences dated August 29th, September 11th and September 19th. Attached hereto as **EXHIBIT 6** is the September 27th, 2024 correspondence.

32.     Baker Donelson acknowledged BBD's allegation that Lifecycle interfered with more than 44 suppliers who were in enforceable and binding contracts with BBD. The correspondence stated, in part, "the law allows—and in fact encourages—competitors in the market to offer alternatives that meet the needs of or otherwise benefit customers." *See* Exhibit 6.

33.     Baker Donelson further stated that, "each of the 44 clients listed in [BBD's] August 29th letter—including Nawab Grill, the subject of your September 19th letter—made the decision to change [WVCO] service providers because they were receiving poor (if any) service from Buffalo Biodiesel." *See* Exhibit 6.

34.     Upon information and belief, Lifecycle has removed equipment from locations where BBD has a valid and enforceable contract.

35.     BBD was initially told by representatives of Lifecycle that they did not have any of BBD equipment. Then representatives of Lifecycle admitted they had three pieces of BBD equipment. Baker Donelson then stated Lifecycle has removed hundreds of pieces of equipment from supplier locations where BBD has a valid and enforceable contract.

36.     Each BBD container costs approx. $1000.

37.     Upon information and belief, representatives of Lifecycle have removed equipment with radar and GPS tracking and then immediately destroyed that equipment on at least three occasions.

38.     Upon information and belief, BBD has lost countless anti-theft devices on its containers in addition to the VATs themselves.

39.     On numerous occasions when BBD went to collect the WVCO from suppliers listed in paragraph 21, drivers found that the anti-theft equipment on the containers was broken or missing, the lid was pried open or removed completely, and all WVCO in the Vats, containers or drums

was stolen. This happened on numerous occasions, including but not limited to the following ten examples:

i.      On or about August 14th, 2023, BBD discovered the anti-theft device on 30 Burgers' 350-gallon VAT removed;

ii.     On or about September 27th, 2023, BBD discovered the anti-theft device on Angelo's Franklin Diner's 350-gallon VAT to be removed. BBD then observed the anti-theft device removed again during the next oil pickup on March 10th, 2024;

iii.    On or about August 11th, 2023, BBD discovered the anti-theft device on Athena Gyro's 350-gallon VAT removed;

iv.     On or about May 20th, 2023, BBD discovered the anti-theft device on Burrini's Olde World Market's 350-gallon VAT to be removed. BBD then observed the anti-theft device removed again during the next four oil pickups. On August 22nd, 2024 and September 30th, 2024 there was no oil in the BBD's 350-gallon VAT. When BBD went to pick up oil on October 12th, 2024, the VAT was removed and Defendant Lifecycle was the only WVCO collector on site;

v.      On or about April 4th, 2024, BBD discovered the anti-theft device on Carmela's Restaurant and Pizzeria's 350-gallon VAT removed. BBD then observed the anti-theft device removed again during the next oil pickup on August 29th, 2024. During the August 29th, 2024 pickup, no oil was collected and Defendant Lifecycle was on site and in use;

vi.     On or about November 5th, 2023, BBD discovered the anti-theft device on Chef's Diner's drums removed. During that pickup, no oil was collected and Defendant Lifecycle was site;

vii.    Citrus Café, under contract with BBD between June 7th, 2018 to June 7th, 2023, advised BBD on August 21st, 2024 that Defendant Lifecycle has been paying them .50 cents per gallon and collecting their oil for three years starting in 2020. BBD collected no oil after May 24th, 2021;

viii.   BBD contracted with five Crust N Fire locations in January of 2023. BBD did not collect any oil from these locations and Defendant Lifecycle appeared on site for all locations. The owner of Crust N Fire contacted BBD attempting to cancel the contract as they were approached and induced to breach their BBD contract by Defendant Lifecycle;

xi.     On or about July 11th, 2024, BBD discovered that the 175-gallon VAT at Dan Zai Ramen Sushi House had been removed and Defendant Lifecycle's equipment took its place;

x.      On or about March 18th, 2024, BBD discovered the anti-theft device on Dao Madison Chinese Restaurant's 175-gallon VAT removed. Additionally, "do not use/fill" placards were placed on BBD's 175-VAT. On June 11th, 2024, BBD received a letter from the supplier to cancel services as they were induced to sign a contract with Defendant Lifecycle;

40.     One such instance that was not referenced in the August 29th, 2024 correspondence is Lucky Strike Cafe by Romeo's. Here, representatives of Lifecycle threatened the owner/manager

and flipped BBD's VAT on its side. The owner/manager was given cards from employees at Lifecycle. Lucky Strike Cafe by Romeo's advised BBD of this.

41.    Many of the BBD suppliers in paragraph 21 sent fraudulent cancellation notices to BBD from Lifecycle – on Lifecycle letterhead – and all were induced into entering agreements with Lifecycle.

**Lifecycle's scheme to steal from BBD, defraud BBD's customers, interfere with BBD's supplier relationships and fraudulently induce BBD's suppliers to breach their BBD contracts included lying and misrepresenting the New York AOD.**

42.    Upon information and belief, Lifecycle is showing and misrepresenting the meaning to suppliers the New York AOD. Using the AOD allowed Lifecycle to induce existing suppliers into signing with Lifecycle and prevented future suppliers from signing with BBD.

43.    Lifecycle lied to current suppliers of BBD, and upon information and belief continues to do so with existing and prospective suppliers, regarding findings in the AOD. This includes, but is not limited to, the following lies, misrepresentations and fabrications:

     i.    Lifecycle has claimed, and continues to claim to existing and prospective suppliers, that the New York Attorney General invalidated BBD's contracts;

    ii.    Lifecycle has claimed, and continues to claim to existing and prospective suppliers, that the New York Attorney General found that BBD improperly paid accounts;

    iii.    Lifecycle has claimed, and continues to claim to existing and prospective suppliers, that the New York Attorney General fined BBD for filing improper suits and failing to serve defendants;

    iv.    Lifecycle has claimed, and continues to claim to existing and prospective suppliers, that BBD was forced to return proceeds of judgments that were procured via fraud on the court back to defendants; and

    v.    Lifecycle has claimed, and continues to falsely claim to existing and prospective suppliers, that BBD was required to pay profit sharing to suppliers and failed to do so.

44.    As a result of using deception, misrepresentation, and outright lying regarding the AOD, BBD has received at least one cancellation notice from a supplier under contract.

**Lifecycle does not follow industry norms in terms of cancellation notices and forms related to removal of competitor equipment.**

45.    It is industry practice to have an abandoned equipment notification and a non-interference verification, which Lifecycle does not have.

46.    Upon information and belief, Lifecycle sends notification to WVCO collection companies as opposed to the customer, which is not the industry standard.

47.    Upon information and belief, Lifecycle does not obtain a removal authorization signed by the supplier or an Affirmation to Remove said equipment, which is not industry standard.

48.    Upon information and belief, Lifecycle has crafted a non-industry cancellation form. Attached hereto as **EXHIBIT 7** is Lifecycles cancellation form.

**Lifecycle is using the existence of a putative class action lawsuit against BBD to induce existing suppliers to breach their contracts.**

49.    Upon information and belief, Lifecycle is paying and working in concert with an attorney who filed a putative class action against BBD with only two participants. This action has not been certified as a class action as of the date of this Complaint and a motion to dismiss said action is pending in Erie County Supreme Court. Attached hereto as **EXHIBIT 8** is an Amended Motion to Dismiss.

50.    Upon information and belief, representatives of Lifecycle are handing out copies of the uncertified, putative class action lawsuit, to current and prospective suppliers and has caused a chilling effect on BBD's ability to keep and sign new accounts.

51.    Upon information and belief, representatives of Lifecycle are telling current BBD suppliers that they could switch to their company and then join the class action against BBD.

**Lifecycle employees induced existing BBD suppliers to breach their contract through lies, misrepresentation, and manipulation.**

52.    Upon information and belief, a former BBD employee, on behalf of Lifecycle, visited one of the BBD's suppliers at issue and falsely stated to that there was a company change and that all

WVCO was going to be picked up by Lifecycle going forward. The former employee, on behalf of Lifecycle, defaced BBD's WCVO Vat with a sticker from another company that performs WVCO collection services, Mahoney Environmental, and falsely claimed that the equipment and contents now belonged to Lifecycle and/or Mahoney Environmental.

53.     BBD has a video of representatives of Lifecycle, in a Lifecycle vehicle, taking oil from a BBD VAT on a supplier's premises that BBD has a valid and enforceable contract with.

54.     Upon information and belief, employees of Lifecycle have been detained by police for stealing BBD WVCO from suppliers. That said individuals then made statements at the time of arrest or detention that they were paid by Lifecycle via traceable funds, such as checks or electronic transfers.

55.     Upon information and belief, representatives of Lifecycle are telling current and prospective clients that BBD does not meet is contractual obligations.

56.     Upon information and belief, representatives of Lifecycle are telling current and prospective suppliers that BBD's business model is to entrap suppliers with contracts, steal the oil in BBD equipment to not pay the supplier and that BBD then sues for the difference.

57.     Upon information and belief, representatives of  Lifecycle are telling current and prospective suppliers that any arrests, indictments and/or convictions for WVCO theft that BBD reports are false.

58.     Upon information and belief, representatives of Lifecycle are telling current and prospective clients that BBD employs actors to steal suppliers' WVCO from BBD equipment on their premises.

59.    Upon information and belief, representatives of Lifecycle are telling current and prospective suppliers that the WVCO currently in BBD's WVCO equipment remained property of the supplier despite what their contract with BBD might state.

60.    Upon information and belief, representatives of Lifecycle are telling current and prospective suppliers that they are getting ripped off by BBD who is not paying them a fair price for the WVCO and that they should sign with Lifecycle because they would then be paid a fair price.

61.    Upon information and belief, representatives of Lifecycle are telling current and prospective BBD suppliers, that they will pay them sometimes in excess of ten times BBD rates to coerce the breaching supplier's cooperation.

62.    Upon information and belief, representatives of Lifecycle are telling current and prospective suppliers that BBD's principal officer is a convicted felon for WVCO theft.

63.    Upon information and belief, the actions of Lifecycle are simply that of a criminal enterprise.

**Lifecycle is being financed by a foreign bank, and Lifecycle is falsely inflating value by inflating WVCO tonnage reports with stolen BBD WVCO.**

64.    Upon information and belief, Lifecyle is not a publicly traded company.

65.    Upon information and belief, Lifecycle is being financed by a foreign bank.

66.    Upon information and belief, in order to keep receiving funds from said foreign bank, Lifecycle increases its company's value by inflating its WVCO tonnage reports with stolen WVCO from BBD suppliers.

67.    Upon information and belief, this practice by Lifecycle of falsely inflating tonnage runs below the radar of the Securities Exchange Commission (SEC).

68.    Upon information and belief, Lifecycle is operating this scheme to avoid the Sarbanes-Oxley Act of 2002.

**BBD is being harmed by the efforts of Lifecycle to induce existing suppliers to breach their contracts and manipulating prospective suppliers to not sign with BBD**

69.    On information and belief, Lifecycle  knew about BBD's contractual and business relationships at the time that Lifecycle wrongly interfered through false statements, damage to equipment, and theft of equipment, including WVCO vats.

70.    BBD has been seriously damaged by the false statements; stolen WVCO equipment; disabled, destroyed, defaced and removed equipment; and wrongful interreference with its contractual and business relationships.

71.    Lifecycle's wrongful actions also harmed BBD's goodwill.

72.    Unless and until Lifecycle's wrongful actions are restrained by this Court, BBD will suffer irreparable injury for which it has no adequate remedy at law.

73.    BBD requires Lifecycle's wrongful actions to be enjoined and/or restrained by the court so that the one hundred plus contracts where BBD suppliers were induced to breach can be investigated and litigated which will result in countless enforcement actions.

74.    On information and belief, the damage Lifecycle directly and proximately caused to BBD exceeds Seventy-Five Thousand Dollars ($75,000.00).

## COUNT ONE

### (Conversion)

75.    BBD incorporates by reference the above allegations as if re-stated herein.

76.    Lifecycle, without authorization, assumed or exercised the right of ownership over goods and personal chattels belonging to BBD to the exclusion of BBD's rights. BBD has ownership of the property at issue and immediate right to take such possession.

77.    Lifecycle used BBD's property wrongfully and also disposed of BBD's property wrongfully.

78.    Lifecycle's conversion of the property at issue caused damage to BBD.

79.    BBD has been damaged in an amount  exceeding Seventy Five Thousand Dollars ($75,000.00)  in a determinate amount  to be determined at a trial with  attorneys' fees, costs, interest and disbursements.

## COUNT TWO

### (Tortious Interference with Contract)

80.    BBD incorporates by reference the above allegations as if re-stated herein.

81.    BBD entered into written contracts with suppliers for the exclusive collection of their WVCO.

82.    As set forth above, Lifecycle was aware, or should have been aware, that contracts between BBD and the suppliers referenced herein existed.

83.    Lifecycle intentionally procured a breach of BBD's contracts with the suppliers and induced suppliers to breach their contracts with BBD, which upon information and belief includes, but is not limited to, the following:

      i.    Representatives of Lifecycle are telling current and prospective suppliers that BBD does not follow their contractual obligations.

ii.   Representatives of Lifecycle are telling current and prospective suppliers that BBD's business model is to entrap suppliers with contracts, steal the WVCO in BBD equipment to not pay the supplier and that BBD then sues for the difference.

iii.  Representatives of Lifecycle are telling current and prospective suppliers that any arrests, indictments and/or convictions for WVCO thefts that BBD reports are false.

iv.   Representatives of Lifecycle are telling current and prospective suppliers that BBD employs actors to steal suppliers' WVCO from BBD equipment on their premises.

v.    Representatives of Lifecycle are telling current and prospective suppliers that the WVCO currently in BBD's equipment remained property of the supplier despite what their contracts might state.

vi.   Representatives of Lifecycle are telling current and prospective suppliers that they are getting ripped off by BBD who is not paying them a fair price for the WVCO and they should sign with Lifecycle because they would then be paid a fair price.

vii.  Representatives of Lifecycle are telling current and prospective suppliers that they will pay them sometimes in excess of ten times BBD rates to coerce the supplier's cooperation in breaching its contract.

viii. Representatives of Lifecycle are falsely telling current and prospective suppliers that BBD's principal officer is a convicted felon for WVCO theft.

84.   Lifecycle lacked justification for inducing breach of contract with existing BBD suppliers based on the lies, misrepresentation, and manipulations referenced above.

85.   Punitive damages are warranted to punish Lifecycle for conduct that exhibits a high degree of moral culpability and illustrates a willful, wanton and reckless disregard for the rights of BBD and their suppliers where valid and enforceable contracts exist.

86.   BBD has no adequate remedy in law for the damages and harm done by Lifecycle's ongoing actions because once suppliers breach their contracts with BBD based on Lifecycle's interference and inducement, BBD's reputation is irreparably harmed.

87.   Irreparable harm will continue to effect BBD unless the conduct described herein by Lifecycle, as set forth above, is enjoined because BBD's reputation in the business community will be lost or irreparably damaged.

88.   Lifecycle's tortious interference with BBD's contracts with the suppliers businesses caused damage to BBD.

89.     BBD has been damaged by Lifecycle in an amount to be determined at a trial, but in no event less than One Million Dollars ($1,000,000.00), and BBD also seeks punitive damages, attorneys' fees, costs, interest and disbursements against Lifecycle.

## COUNT FOUR

### (Unjust Enrichment)

90.     BBD incorporates by reference the above allegations as if re-stated herein.

91.     Lifecycle is in possession of money or property that rightly belongs to BBD.

92.     Lifecycle obtained such money or property from BBD that, in good conscience, should not be retained by Lifecycle.

93.     BBD unwillingly conferred a benefit on Lifecycle including but not necessarily limited to WVCO, vats, containers drums, and other equipment. Lifecycle knew about and appreciated the benefit, and accepted it under circumstances that make it inequitable for Lifecycle to retain the benefit without payment of its value.

94.     Punitive damages in BBD's favor are warranted to punish Lifecycle for conduct that exhibits a high degree of moral culpability and illustrates a willful, wanton and reckless disregard for the rights of BBD and their suppliers where valid and enforceable contracts exist.

95.     BBD has been damaged by Lifecycle in an amount to be determined at a trial, but in no event less than One Million Dollars ($1,000,000.00), and BBD also seeks punitive damages, attorneys' fees, costs, interest and disbursements against Lifecycle.

96.     Accordingly, Lifecycle was unjustly enriched and should be compelled to pay BBD for the value of the unwilling benefits conferred.

## COUNT FIVE

### (Fraud)

97.     BBD incorporates by reference the above allegations as if re-stated herein.

98.     Lifecycle made material, false representations to the management of suppliers that BBD had valid and enforceable contracts with (and possibly others) that a company-wide switch of the WVCO collection vendor had taken place and that Lifecycle was the new WVCO collection vendor instead of BBD. Essentially, falsely stating that Lifecycle had  that had replaced BBD.

99.     Lifecycle knew that this representation was and is false, and intended that the recipients would rely on the false representations in a manner reasonably contemplated, which is to allow Lifecycle to claim BBD's WVCO collection tanks, use and claim BBD's equipment, and take away and sell  BBD's WVCO.

100.    BBD suppliers  were ignorant of Lifecycle's false representations and upon information and belief, relied on their truth, and were caused injury thereby in the form of being fraudulently induced to allow trespassers on their premises, to allow theft of BBD's equipment to occur on their premises, and to breach their contracts with BBD.

101.    Lifecycle's fraud also caused damage to BBD, and Lifecycle profited by its fraud at the expense of BBD.

102.    Lifecycle is liable for the damage to BBD and/or BBD is entitled to a constructive trust on Lifecycle's gross  profits from the fraud that would have otherwise belonged to BBD.

103.    BBD has been damaged by Lifecycle in an amount to be determined at a trial, but in no event less than $1 million. BBD also seeks punitive damages, attorneys' fees, costs, interest and disbursements against Lifecycle.

## COUNT SIX

### (Deceptive Business Practices)

104.    BBD incorporates by reference the above allegations as if re-stated herein.

105.    Pursuant to NY General Business Law 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

106.    As set forth herein, Lifecycle's conduct directed at BBD and its suppliers was materially misleading and/or false, which upon information and belief includes, but is not limited to, the following:

i.    Representatives of Lifecycle are telling current and prospective suppliers that BBD does not honor its contractual obligations.

ii.    Representatives of Lifecycle are telling current and prospective suppliers that BBD's business model is to entrap suppliers with contracts, steal the WVCO in BBD equipment to not pay the supplier and that BBD then sues the supplier for the difference.

iii.    Representatives of Lifecycle are telling current and prospective suppliers that any arrests, indictments and/or convictions for theft of WVCO that that BBD reports are false.

iv.    Representatives of Lifecycle are telling current and prospective suppliers that BBD employs actors to steal suppliers' WVCO from BBD equipment on their premises.

v.    Representatives of Lifecycle are telling current and prospective suppliers that the WVCO  currently in BBD's vats, containers or drums remained property of the supplier despite what their contract might state.

vi.    Representatives of Lifecycle are telling current and prospective suppliers that they are getting ripped off by BBD who is not paying them a fair price for the WVCO, and that they should sign with Lifecycle because they would then be paid a fair price.

vii.    Representatives of Lifecycle are telling current and prospective suppliers that they will pay them sometimes in excess of ten times BBD rates to coerce the suppliers into breaching their contracts.

viii.    Representatives of Lifecycle are falsely telling current and prospective suppliers that BBD's principal officer is a convicted felon for WVCO theft.

107.    Lifecycle's deceptive acts were likely to, and in fact did, mislead reasonable suppliers into breaching their valid and enforceable contracts with BBD so that the customer would supply their WVCO to Lifecycle instead.

108.    Lifestyle's actions were and are without justification and are being done with malice for the purpose of destroying BBD's business and/or damaging BBD's good will and reputation and/or inappropriately taking BBD's suppliers contracts and the WVCO they generate that belong to BBD.

109.    Punitive damages are warranted to punish Lifecycle for conduct that exhibits a high degree of moral culpability and illustrates a willful, wanton and reckless disregard for the rights of BBD and its suppliers where a valid and enforceable contract exists.

110.    BBD has no remedy at law for the damage done by Lifecycle because once BBD's customers breached their contracts, as a result of Lifecycle's actions, BBD's reputation was and continues to be harmed.

111.    Irreparable harm will continue to effect BBD unless the conduct described herein by Lifecycle, as set forth above, is enjoined because BBD's reputation in the business community will be lost or irreparably damaged.

112.    Lifecycle should be permanently enjoined from conducting any business with BBD's customers.

113.    BBD has been damaged by Lifecycle in an amount to be determined at a trial, but in no event less than One Million Dollars ($1,000,000.00). BBD also seeks punitive damages, attorneys' fees, costs, interest and disbursements against Lifecycle.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Buffalo Biodiesel, Inc. demands the following:

a.  An Order holding that Lifecycle's actions described above make Lifecycle liable to BBD;

b.  An Order permanently enjoining Lifecycle from wrongly converting and damaging BBD's equipment.

c.  An Order permanently enjoining Lifecycle from wrongfully interfering with BBD's contracts and business relationships with current suppliers;

d.  An Order permanently enjoining Lifecycle from interfering with BBD's ability to sign prospective clients through lies, misrepresentation, and manipulation;

e.  An Order directing Lifecycle to return BBD's equipment that is in Lifecycle's possession or control,

f.  An Order requiring Defendant Lifecycle to pay BBD's damages caused by Defendant Lifecycle's conduct in an mount of Three Million Dollars ($3,000,000.00)

g.  An Order imposing a constructive trust on profits of Lifecycle for BBD's benefit to the extent of Lifecycle's gross profits related to WVCO and WVCO wrongfully taken from BBD;

h.  An Order requiring Lifecycle to pay punitive damages to BBD and to pay BBD's attorney fees; and

i.  Any other relief that the Court deems appropriate,

**DESIGNATIONS OF PLACE OF TRIAL**

Plaintiff designates Buffalo, New York, as the place of trial of this cause of action.

**JURY DEMAND**

BBD demands a trial by jury on all issues so triable.

Dated:
Buffalo, New York
December 9, 2024

PATRICK M. BALKIN, ESQ.
Attorney for Buffalo Biodiesel, Inc.
17 Court Street
Buffalo, New York 14202
(716) 281-4928