## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BUFFALO BIODIESEL, INC.,      **)**

                                           **)**

    Plaintiff/Counter-Defendant,    **)**

                                           **)**    Case No. 1:25-cv-8905 (ER)

v.                                 **)**

                                         **)**    The Honorable Edgardo Ramos

LIFECYCLE RENEWABLES, INC.,    **)**

                                         **)**

    Defendant/Counter-Plaintiff.    **)**

                                         **)**

## DEFENDANT LIFECYCLE RENEWABLES, INC.'S
## FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendant, Lifecycle Renewables, Inc. ("**Lifecycle**" or "**Defendant**"), by and through its attorneys, and pursuant to Rules 8, 12, 13, and 15 of the Federal Rules of Civil Procedure and the Agreed Civil Case Discovery Plan and Scheduling Order (Dkt. No. 43), hereby submits its First Amended Answer and Counterclaims to the Complaint of Plaintiff Buffalo Biodiesel, Inc. ("**BBD**" or "**Plaintiff**") filed in this matter (the "**Complaint**") as follows:

### ANSWER

### SUMMARY OF ACTION[1]

The arguments contained in BBD's "Summary of Action" are not factual allegations and do not warrant a response. For the avoidance of doubt, Lifecycle categorically denies BBD's allegations, as set forth in more detail below.

### THE PARTIES

1.      Admitted, upon information and belief.

---

[1]    The headings used in Defendant's Answer to the Complaint are identical to those used in Plaintiff's Complaint. Those headings are incorporated for ease of reference and are not intended to be, nor should they be interpreted as, an admission, waiver, or other concession by Defendant as to the truth of any assertion contained therein, or of any inference that could be made therefrom.

1

2.      Denied that Lifecycle is a Massachusetts corporation.  Admitted that Lifecycle's principal place of business is located at 75 Industrial Avenue, Tewksbury, Massachusetts 01876.

## JURISDICTION AND VENUE

3.      Admitted that BBD and Lifecycle are citizens of different states and that the matter in controversy is alleged to have a value greater than $75,000.00.  The remaining allegations are legal conclusions that warrant no response.

4.      Denied that Plaintiff's location is relevant to establish venue under 28 U.S.C. § 1391(b).  Further denied that a substantial part of the events giving rise to the claim(s) occurred in, or that a substantial part of the property alleged to be at issue is situated within, the Western District of New York.  The remaining allegations are legal conclusions that warrant no response.

## FACTUAL BACKGROUND

5.      Admitted, upon information and belief, that BBD contracts with suppliers to service and remove Waste Vegetable Oil ("WVO").  Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein.

6.      Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.  To the extent the allegations seek to summarize written agreements, the written terms of such agreements speak for themselves.

7.      Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's efforts pursuant to its contracts. Denied to the extent the allegations imply that BBD retains ownership of equipment that it has abandoned on its former customers' property.

8.    Admitted, upon information and belief, that BBD has operations in Michigan, Ohio, Pennsylvania, New York, New Jersey, and Connecticut.  The remaining allegations are legal conclusions that warrant no response.

9.    Denied.

10.    Admitted that the presence of WVO equipment on site at a commercial property can suggest that the business either currently uses or previously used that vendor to recover its WVO.  Denied to the extent that the allegations imply that a business is unable to switch vendors, and further denied to the extent that the allegations fail to acknowledge that a vendor may have abandoned its equipment.

11.    Admitted that there is opportunity for growth in the WVO recycling business, though there is volatility in the market, which peaked in or around 2022.  Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

12.    Admitted that WVO theft is a known concern in the industry.  Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the actions of others in the industry.  Denied to the extent that the allegations imply any such wrongdoing by Lifecycle.

13.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

14.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

15.    Admitted that Lifecycle's counsel sent correspondence to BBD on August 28, 2024, and that Exhibit 2 to the Complaint appears to be a true and correct copy of the same, which speaks for itself.

16.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's actions, save those set forth in the August 28, 2024, letter.  The remaining allegations are legal conclusions that warrant no response.

17.    Denied.

18.    Denied.

19.    Denied.

20.    Admitted that Lifecycle received a letter from BBD dated August 29, 2024, and that Exhibit 3 to the Complaint appears to be a true and correct copy of the letter, which speaks for itself.  The remaining allegations are legal conclusions that warrant no response.

21.    Denied.

22.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning purported theft of WVO from BBD-marked equipment.  The remaining allegations are legal conclusions that warrant no response.

23.    Denied.

24.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the amount of WVO that BBD was able to recover from its customers.  Denied as to the remaining allegations.

25.    Admitted that Lifecycle received a letter from BBD dated September 11, 2024, and that Exhibit 4 to the Complaint appears to be a true and correct copy of the letter, which speaks for itself.

26.    Admitted that Lifecycle received a letter from BBD dated September 19, 2024, and that Exhibit 5 to the Complaint appears to be a true and correct copy of the letter, which speaks for itself.  The remaining allegations are legal conclusions that warrant no response.

27.     Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term or extent of any agreement between BBD and Nawab Grill.  The remaining allegations are legal conclusions that warrant no response.

28.     Admitted that, on or about July 26, 2024, Nawab Grill authorized Lifecycle to provide BBD with a Notice to Discontinue Service on its behalf, which notice speaks for itself. Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the date of BBD's receipt of that Notice.

29.     Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's activities.

30.     Admitted that BBD's letter dated August 29, 2024 (Exhibit 3 to the Complaint, which speaks for itself) references Nawab Grill.

31.     Admitted that Lifecycle's counsel sent correspondence to BBD on September 27, 2024, and that Exhibit 6 to the Complaint appears to be nearly a true and correct copy of the same—except that Exhibit C to the original letter included a BBD "Equipment Removal Request Form" while the purported Exhibit C to Exhibit 6 of the Complaint is a mere repeat of the September 19, 2024, BBD letter.  A corrected Exhibit 6 (including the cover e-mail, as provided to Plaintiff's counsel) is attached as **Defendant's Exhibit A**, for completeness.

32.     Denied.  The September 27, 2024, correspondence speaks for itself, and the remaining allegations are legal conclusions that warrant no response.

33.     Admitted.

34.     Denied.

35.    Admitted that, in or around the fall of 2024, representatives of Lifecycle and BBD discussed the potential return of equipment to BBD that may have been in Lifecycle's possession. Denied as to the remaining allegations.

36.    Denied.

37.    Denied.

38.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's activities and equipment.

39.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's activities and equipment.

40.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations contained herein.  Denied to the extent that the allegations imply that Lifecycle would have authorized or condoned such actions.

41.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the actions of the referenced customers.  The remaining allegations are legal conclusions that warrant no response.

42.    Denied.

43.    Denied.

44.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the actions of the referenced customers.  Denied as to the remaining allegations.

45.    Admitted, upon information and belief, that end-of-service notifications are standard in the industry.  Denied as to the remaining allegations.

46.    Admitted that that Lifecycle may provide end-of-service notifications directly to a WVO collection company, upon request and/or as a courtesy to its customers. Denied as to the remaining allegations.

47.    Denied.

48.    Admitted that Exhibit 7 to the Complaint appears to be a "Notice to Discontinue Service" on Lifecycle letterhead, which notice speaks for itself. Denied as to the remaining allegations.

49.    The referenced action and its pleadings speak for themselves. Denied as to the remaining allegations.

50.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations contained herein. Denied to the extent that the allegations imply that Lifecycle would have authorized or condoned such actions.

51.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations contained herein. Denied to the extent that the allegations imply that Lifecycle would have authorized or condoned such actions.

52.    Denied.

53.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the contents of a video that it has not seen, and which ostensibly speaks for itself. Denied to the extent that the allegations imply that Lifecycle authorized or condoned removal of equipment that was not abandoned. The remaining allegations are legal conclusions that warrant no response.

54.    Admitted that Lifecycle employees cooperated with an investigation by Harriman, New York law enforcement in or around the summer of 2024. Denied as to the remaining allegations and to the extent that any impropriety by Lifecycle is implied by the same.

55.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

56.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

57.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

58.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

59.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

60.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

61.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

62.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein.

63.    Denied.

64.    Admitted.

65.    Denied.

66.    Denied.

8

67.     Denied.

68.     Denied.

69.     Denied.

70.     Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether BBD has suffered harm as a result of any stolen and/or destroyed WVO equipment.  Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.

71.     Denied.

72.     Denied.

73.     Denied that Lifecycle engaged in any such wrongdoing.  The remaining allegations are legal conclusions that warrant no response.

74.     Denied.

## COUNT ONE
### (Conversion)

75.     Lifecycle restates its responses to Paragraphs 1-74 as if set forth fully herein.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether BBD has suffered harm.  Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.

## COUNT TWO
### (Tortious Interference with Contract)

80.     Lifecycle restates its responses to Paragraphs 1-79 as if set forth fully herein.

81.     Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BBD's actions.

82.     Admitted that Lifecycle was at times aware of certain customers' prior use of and/or frustrations with BBD's services.  Denied as to the remaining allegations.

83.     Denied that Lifecycle engaged in any such wrongdoing as set forth in Paragraph 83.  Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations in the sub-paragraphs set forth therein.  The remaining allegations are legal conclusions that warrant no response.

84.     Denied.

85.     Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

86.     Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

87.     Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm, to the extent it would not be speculative.  The remaining allegations are legal conclusions that warrant no response.

88.     Denied.

89.     Denied.

## COUNT FOUR[2]
### (Unjust Enrichment)

90.     Lifecycle restates its responses to Paragraphs 1-89 as if set forth fully herein.

91.     Denied.

---

[2]     *Sic.*

92.     Denied.

93.     Denied.

94.     Denied that Lifecycle engaged in any such wrongdoing.  The remaining allegations are legal conclusions that warrant no response.

95.     Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

96.     Denied.

## COUNT FIVE[3]
### (Fraud)

97.     Lifecycle restates its responses to Paragraphs 1-96 as if set forth fully herein.

98.     Denied.

99.     Denied.

100.    Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge or actions of the referenced customers.  Denied to the extent that the allegations imply wrongdoing by Lifecycle.

101.    Denied.

102.    Denied.

103.    Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

## COUNT SIX[4]
### (Deceptive Business Practices)

104.    Lifecycle restates its responses to Paragraphs 1-103 as if set forth fully herein.

---

[3]     *Sic.*
[4]     *Sic.*

105.    The text of N.Y. Gen. Bus. Law § 349 speaks for itself and warrants no response.

106.    Denied that Lifecycle engaged in any such wrongdoing as set forth in Paragraph Lifecycle is without knowledge or information sufficient to form a belief as to the truth of the allegations in the sub-paragraphs set forth therein.  The remaining allegations are legal conclusions that warrant no response.

107.    Denied.

108.    Denied.

109.    Denied that Lifecycle engaged in any such wrongdoing.  The remaining allegations are legal conclusions that warrant no response.

110.    Denied.

111.    Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

112.    BBD's statement concerning the propriety of injunction is a legal conclusion that warrants no response.

113.    Denied to the extent that the allegations imply that Lifecycle is responsible for any such harm.  The remaining allegations are legal conclusions that warrant no response.

## REQUEST FOR RELIEF

The remaining paragraphs of Plaintiff's Complaint are requests for relief that do not require a response.  For the avoidance of doubt, Defendant denies that BBD is entitled to any form of relief.

## DESIGNATION OF PLACE OF TRIAL

Lifecycle expressly denies that Buffalo, New York would be an appropriate location for a trial of the above-captioned action to be heard.

## JURY DEMAND

BBD's request for a jury trial warrants no response.

12

## DEFENDANT'S AFFIRMATIVE AND ADDITIONAL DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Lifecycle relies upon the following defenses. In asserting these defenses, Lifecycle does not concede that it has the burden of proof or production on any of them and further does not assume the burden of proof with respect to any matter as to which BBD has the burden of proof. Further, Lifecycle has not yet completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The affirmative defenses asserted herein are therefore based on Lifecycle's knowledge, information, and belief at this time, and Lifecycle specifically reserves the right to modify, amend, or supplement any affirmative defenses contained herein at any time. Further, Lifecycle reserves the right to assert additional affirmative defenses as information is gathered through discovery and investigation.

Subject to the preceding qualifications, and without admitting any of the facts alleged by BBD, Defendants plead the following affirmative defenses:

1.      BBD failed to sufficiently serve the Complaint by, *inter alia*, failing to include a summons, which "***must*** be served with a copy of the complaint," pursuant to Rule 4(c) of the Federal Rules of Civil Procedure (emphasis added).

2.      BBD's action is barred by its failure to bring suit in a proper venue, pursuant to 28 U.S.C. § 1391.

3.      Some or all of BBD's claims fail to state a claim upon which relief can be granted.

4.      BBD has not suffered any damages that were in any way caused or contributed to by Lifecycle and/or for which BBD is entitled to relief.

5.      In the alternative, and to the extent any damages did occur, BBD failed to mitigate any alleged losses and damages.

6.      Some or all of BBD's claims are barred by the doctrines of laches, unclean hands, waiver, and/or estoppel.

7.      This action, in whole or in part, is frivolous, unreasonable, and groundless; accordingly, Lifecycle is entitled to attorney's fees and other costs associated with the defense of this action.

8.      BBD's claims of fraud, misrepresentation and deception are barred by the absolute defenses of truth of any material statements or representations and/or a lack of intent to deceive on the part of any Lifecycle representative who may have made such statements.

9.      BBD failed to plead fraud with the requisite level of specificity required by applicable law and rules, including Rule 9(b) of the Federal Rules of Civil Procedure.  For example, BBD alleges (without support) numerous baseless allegations—including that Lifecycle hired actors to steal WVO—yet failed to provide names, dates, or any substantive details that would give credence to such accusations.

10.      BBD's conversion claims are barred by the defenses of estoppel and abandonment, and BBD's accusations of conversion are both unfounded and hypocritical.  To the extent that any equipment previously belonging to BBD was removed by Lifecycle, Lifecycle maintains that it acted with authority of the customer after notice was duly given to BBD.  This practice is common throughout the industry and is, upon information and belief, a practice that BBD itself follows. When BBD failed to remove its equipment within a reasonable amount of time, it so forfeited its possessory interest in said equipment. *See, e.g.*, *Cretaro v. Huntington,* 166 N.Y.S. 3d 80, 82 (4th Dep't 2022). *See also, Starrett City, Inc. v. Smith,* 889 N.Y.S.2d 362,365 (2d Dep't 2009) ("Abandonment in the law depends upon the concurrence of two and only two factors; one, an intention to abandon or relinquish; and two, some overt act, or some *failure to act,* which carries

14

the implication that [the party abandoning] neither claims nor retains any interest in the subject matter of the abandonment" (emphasis added) (quoting *City of Binghamton v. Gartell,* 90 N.Y. S.2d 556 (3d Dep't 1949). In addition, counsel to Lifecycle has, for months, consistently notified BBD's counsel that Lifecyle is willing to arrange for BBD to recover any of its abandoned equipment that Lifecycle may still have in its possession; however, BBD has consistently failed to take any action to recover its abandoned equipment.

11.    BBD's tortious interference claims are barred because Lifecycle's actions were justified under common business practices and principles and do not rise to the level of tortious interference. *See Guard-Life Corp. v. S. Parker Hardware MFG. Corp.*, 50 N.Y.2d 183, 193 (1980) (persuasive actions of competitor that led customers to change their buying practices was "legitimate competitive activity" and did not rise to the level of tortious interference). Further, BBD's claims are barred because Lifecycle did not act in an improper manner or with malice.

12.    BBD's claims are further barred because of BBD's own performance of fraudulent and/or illegal actions, and the manner and scope by which BBD attempts to secure and enforce its customer contracts are against public policy and/or are illegal. *See, e.g., Apex Hosiery Co. v. Leader,* 310 U.S. 469, 497-501 (1940) (declaring restraints on competition, including contracts, that "deprive purchasers or consumers of the advantages which they derive from free competition" unlawful under the Sherman Antitrust Act).

13.    To the extent any employee or agent of Lifecycle may be found to have engaged in any improper conduct, which is denied, Lifecycle is not liable for such conduct because it was outside the course and scope of any duties performed for or on behalf of Lifecycle and was neither condoned nor ratified by Lifecycle.

14. To the extent BBD's claims are barred in whole or in part by the applicable statute of limitations, such statute is pled as a bar to BBD's claims.

15. Lifecycle denies that BBD has suffered any loss or damages, and further asserts that any losses or damages sustained by BBD are *de minimus*, remote, speculative and/or transient and hence are not cognizable at law.

16. To the extent BBD requests an award of punitive damages, BBD fails to plead the aggravating factor(s) with particularity that would give rise to a claim for punitive damages against Lifecycle.

17. If BBD sustained any damages as alleged, such damages were not caused, directly or proximately, by any acts and/or omissions of Lifecycle or their authorized employees, agents, or representatives. Rather, BBD's own acts and omissions proximately caused and/or contributed to any loss, injury, damage or detriment BBD alleges it sustained.

18. Lifecycle has at all times denied that it engaged in any form of unlawful business practice, tortious interference, fraudulent misrepresentation, or conversion. To the extent BBD fails to prevail on its claims and the Court determines that such claims were brought in bad faith, Lifecycle requests an award of reasonable attorney's fees pursuant to applicable state laws.

**DEFENDANT'S PRAYER FOR RELIEF AS TO PLAINTIFF'S CLAIMS**

WHEREFORE, having answered BBD's Complaint, Lifecycle prays for relief as to those claims as follows:

A. That BBD's Complaint be dismissed with prejudice and that BBD takes nothing by its Complaint;

B. That Judgment be entered in favor of Lifecycle on all counts;

C. That Court costs and discretionary costs be taxed to BBD;

16

D.    To the extent that BBD's claims are proven frivolous, that the Court award Lifecycle its reasonable attorneys' fees and expenses; and

E.    For such other and further relief as the Court deems just and proper.

## COUNTER-COMPLAINT

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counter-Plaintiff Lifecycle Renewables, Inc. ("**Lifecycle**" or "**Counter-Plaintiff**") submits the following causes of action and claims for relief against Counter-Defendant Buffalo Biodiesel, Inc. ("**BBD**" or "**Counter-Defendant**"):

## FACTUAL BACKGROUND

**A.    Lifecycle's Mission To Provide Clean Heat And Quality Customer Service**

1.    Lifecycle Renewables was originally founded in 2008 as a Delaware corporation, with a principal place of business at 75 Industrial Avenue, Tewksbury, Massachusetts 01876, since 2017.

2.    Lifecycle has developed a proprietary, renewable heating fuel, known as "Truburn," which has been used by Lifecycle's heating oil buyers (including universities and large-scale office buildings) throughout the Northeast since 2014.[5]

3.    To create Truburn, Lifecycle sources Waste Vegetable Oil ("**WVO**") from its restaurant customers (its "**Customers**").[6]

4.    Lifecycle began by servicing Customers in and around the Metro Boston area in 2008 and has expanded its service area to include much of the northeastern seaboard—from Maine down to northeastern Maryland.

---

[5]    For more information, please see https://truburnfuel.com.
[6]    For more information, please see https://lifecyclerenewables.com/restaurants.

5.     In addition to its Massachusetts headquarters, Lifecycle has operational hubs in Hamden, Connecticut; Littleton, New Hampshire; Toms River, New Jersey; and Chester, Pennsylvania.

6.     Lifecycle's expansion over the past decade has been aided by its acquisitions of other WVO buyers and their brands, which now include Green Earth Biodiesel (New Jersey); Eden Green (PA); YelloGreen (Connecticut); Envirotek (Massachusetts); and Smartfuel America (New Hampshire).

7.     Lifecycle prides itself in its customer service, which includes paying a fair price for the WVO provided; grease trap cleaning services; WVO level monitoring through advanced AI technology (coined "TruView"); 24-hour WVO pickup guarantee; and the provision of new, clean, and locked containers for each new Customer.

**B.     Buffalo Biodiesel Takes Advantage of Its "Supplier" Customers**

8.     Tellingly, BBD's own Complaint refers to the restaurants it services not as its "customers" but merely as "suppliers."

9.     Upon information and belief, BBD's business model is to lock its customers—which are often mom & pop shops and other small business owners—into multi-year, exclusive contracts with guaranteed minimums for the supply of WVO to BBD.

10.     Upon information and belief, BBD representatives will inflate the actual expected WVO amounts, working higher guaranteed minimums into the contracts under the false assurance that a higher listed WVO production amount will ensure that the restaurant will receive good service from BBD in exchange. Instead, BBD uses the higher amount to calculate higher expectancy damages.

18

11.     Upon information and belief, BBD representatives pressure non-owner restaurant employees into signing contracts with BBD and then hold the restaurants accountable for the contracts that their employees (including cooks, dishwashers, and waitresses) have signed onto.

12.     Further, BBD's representatives are willing to secure new customers through fraud and deceit.  For example, after Lifecycle acquired Green Earth Biodiesel in 2023, it came to Lifecycle's attention that BBD's authorized representative (Mr. Ross Biernick) falsely informed at least a dozen former Green Earth customers (identifiable by the "Green Earth" marked equipment on site) that Green Earth was no longer in business and that BBD was authorized to take over their contracts.  This misrepresentation led the customers to sign five-year contracts with BBD, which they otherwise would not have entered into had they known that it was Lifecycle, and not BBD, that acquired Green Earth.

13.     In August 2024, Lifecycle informed BBD and its counsel of Mr. Biernick's actions and demanded that such customers be released from their contracts and given the opportunity to sign on with an alternative service provider of their choosing, but BBD did not so release any of its customers from their exclusive contracts.  *See* **Plaintiff's Exhibits 2, 4**.

14.     Upon information and belief, BBD's sales representatives are incentivized by BBD management to engage in such dishonest tactics to sign on new customers with higher WVO production expectations, including through incentive pay and other encouragement to grow BBD's services at all costs.

15.     BBD customers and former customers have widely reported to Lifecycle representatives that they do not receive the services promised by and expected from BBD when they signed on for their WVO pickup services.

19

16.     For example, customers have reported to Lifecycle's representatives that BBD does not regularly come to pick up their WVO and fail to answer their customers' calls requesting WVO pickup.  The result is a messy, dangerous, and unsanitary situation where WVO overflows from BBD's equipment onto the restaurants' premises.

17.     In addition, customers have reported to Lifecycle that BBD often fails to pay or underpays its customers for the oil that does get picked up.  Upon information and belief, BBD representatives similarly do not answer or return customer calls inquiring about such insufficient payments.

18.     It is further understood, upon information and belief, that BBD's equipment is not secured by locks and other technology that has become standard in the business and further that, when WVO is stolen (which is unfortunately a rampant issue in the business) from BBD's equipment, BBD holds its customers responsible for the stolen WVO.

19.     Upon information and belief, when a customer tries to switch providers, BBD's response is to threaten litigation for breach of their multi-year, exclusive contract, force a settlement of such litigation, and/or pressure the customer into signing a settlement agreement that further prevents the customer from utilize a competitor service.[7]

20.     This is not the first time that BBD has utilized legal pressures in an attempt to secure leverage against its customers.  For example, in 2016, the Attorney General of the State of New York found that "Buffalo biodiesel has engaged in repeated violations of Executive Law, § 63(12)" after an investigation into BBD's "practice of filing actions in Buffalo City Court or Erie County

---

[7]     *See ALD Asian Cuisine, LLC et al. v. Buffalo Biodiesel, Inc.* (Sup. Ct., Erie Cnty., NYSCEF Index No. 811813/2024).

Supreme Court when it alleged that the defendant [customer] violated the Waste Vegetable Cooking Oil Collection Agreement."[8]

21. BBD's deceitful tactics include dishonest efforts to ensure positive reviews and press. For example, upon information and belief, BBD provides gift cards in exchange for a five-star review, in an effort to ensure that its failures to provide decent customer service and/or its efforts to strong arm its customers are swept under the rug.

22. Upon information and belief, BBD targets mom-and-pop shops and other small business owners as its "supplier" customers because they are unable and/or unwilling to fight back against BBD's tactics.

**C.   Lifecycle Has Legitimately Gained Business From Unhappy BBD Customers, So BBD Seeks To Intimidate Lifecycle Into Retreating From Engaging In Fair Competition.**

23. When Lifecycle representatives receive a request for services from a potential customer that is currently using another service provider (like BBD), they provide the customer with a Notice to Discontinue Service ("**NDS**"), which the customer fills out and is then sent to the current service provider.

24. Such an NDS is standard in the industry. Lifecycle's NDS provides that "Within 15 days of the date of this letter, all equipment at the above-mentioned account address must be removed. After 15 days . . . your on-site equipment will be deemed abandoned, and we shall take the appropriate action to remove it."[9]

25. After such time has run, if a customer requests that Lifecycle remove the old equipment, Lifecycle obliges with the customer's request. This practice is likewise standard in the industry.

---

[8]     *See id.,* Doc. Nos. 4, 9.
[9]     *See* **Defendant's Exhibit A**, at p. 15.

26.     Upon information and belief, BBD's own "Equipment Removal Request Form" that it provides to its customers includes substantially similar language, requesting that the previous supplier remove its equipment within two weeks and that, if the equipment remains on premises more than thirty (30) days after notification, "it will be deemed **legally abandoned**" (emphasis in original).[10]

27.     When BBD so abandons its equipment, Lifecycle has at times removed such equipment in response to a customer request.  The BBD equipment is older than Lifecycle's equipment and of little to no utility, so Lifecycle will store and (eventually) scrap the equipment after BBD has made no effort to recover its equipment.

28.     Even after issuing dozens of demand letters upon Lifecycle and its counsel—many of which were baseless—BBD was given months of fair opportunity to contact counsel in order to arrange for BBD to recover any equipment that Lifecycle may have in its possession.[11]  BBD's counsel never responded but instead filed its Complaint.

29.     Similarly, BBD wrote letters to Lifecycle and its counsel claiming tortious interference with contract and other unfounded claims, and, instead of engaging with counsel, filed its similarly unfounded Complaint, without any notice to counsel.

30.     BBD's failure to engage with counsel on the merits of its claims is further proof that BBD's Complaint is frivolous and intended not to seek recovery of legitimate damages but to scare its direct competition from entering the markets in which BBD operates, including New York, New Jersey, Connecticut, and others.

---

[10]     *See* **Defendant's Exhibit A**, at p.19.
[11]     *See* **Defendant's Exhibit B**, which is a true and correct copy of Lifecycle's January 22, 2025, response to BBD's equipment demand letters.

31.     BBD's aforementioned actions have caused, and will continue to cause, significant, irreparable harm to Lifecycle, including but not limited to loss of revenue, damage to business reputation and brand, and legal fees and costs.

32.     Further, BBD's aforementioned actions are in violation of various state and federal laws designed to protect consumers from deceitful business practices and unfair restraints on competition, and BBD should be enjoined from engaging in such practices.

33.     Unless and until BBD's unlawful actions are restrained by the Court, Lifecycle will continue to suffer irreparable harm for which there is no adequate remedy at law.

**D.      Buffalo Biodiesel Has Stolen Lifecycle's WVO Containers**

34.     Not only are BBD's claims against Lifecycle frivolous, but they are also plainly hypocritical. It turns out that it is BBD, not Lifecycle, that steals WVO equipment. BBD has done so in tandem with filing these frivolous claims against BBD, all in furtherance of its anti-competitive scheme and in a transparent attempt to manufacture venue to litigate this vexatious dispute in the Western District of New York.

35.     As described above and in its Affirmative Defense No. 10 (pages 14-15), Lifecycle provided BBD with ample notice and months of fair opportunity to arrange for and recover its WVO containers. BBD has provided no such opportunity to Lifecycle in return.

36.     Instead, as described below, BBD and/or its agents have provided insufficient notice or removal and, instead of making a good faith effort to return Lifecycle's equipment in response to reasonable requests, hauled the WVO containers 400 miles away, often across state lines, to the Canadian border. All the while, BBD has rebuffed every Lifecycle demand for return and other reasonable recovery efforts, as set forth herein.

37.    In or about February 2025, for example, BBD removed three WVO containers belonging to Lifecycle from the following locations in New York and New Jersey, along the I-95 corridor:

- Great Wall Chinese Food, 212 Atlantic City Blvd., Pine Beach, New Jersey;

- Los Azteca Mexican Restaurant, 500 US-9., Bayville New Jersey; and

- You You Asian Cuisine, 465 Route 211, Middletown, New York.

38.    Upon information and belief, although a Notice to Discontinue Service ("**NDS**") had apparently been issued by the three restaurants (using BBD-drafted letters) indicating that BBD would be taking over WVO collection services (which notices were dated in May 2024 but not received until roughly four months later), BBD failed to provide its purported customers with BBD equipment for months.

39.    When Lifecycle representatives arrived on site to collect their equipment in or around September 2024, they observed that doing so would leave the customers without a place to dispose of their WVO.  And so, the Lifecycle equipment remained on site, for customers' use in the interim.

40.    As of February 26, 2025, GPS data from Lifecycle's containers indicated that the first two of these containers were being held at BBD's Ewing Station location in Ewing Township, NJ and the third was being held at BBD's Modena Station location in Modena, NY.[12]

41.    In response to BBD's removal of its equipment, on March 3, 2025, Lifecycle, through counsel, reached out via email to BBD's general counsel, Patrick Balkin, Esq., and requested that BBD return Lifecycle's WVO containers. Lifecycle also requested that BBD give Lifecycle at least 10 business days' advance notice for any further Lifecycle WVO equipment it

---

[12]    For more information, please see https://www.buffalobiodiesel.com/contacts.

intended to remove from a customer's property, to allow Lifecycle reasonable opportunity to remove its own equipment after BBD was able to place BBD's equipment on site.

42.    On April 2, 2025, Mr. Balkin responded by letter to Lifecyle in which he conceded that BBD had indeed taken Lifecycle's WVO containers. Mr. Balkin also directed Lifecycle to contact Tom George, BBD's Chief Operating Officer, who he claimed would arrange for return of Lifecycle's WVO containers.

43.    Lifecycle's containers are of high-quality and are equipped with high-tech features, rendering them extremely valuable. Each container weighs approximately 250 pounds when empty and up to 2500 pounds when full, can store hundreds of gallons of WVO, and cost up to $2,500 to replace.

44.    Mr. Balkin eventually provided a number that was supposed to be a direct line to Mr. George, but the number did not route Lifecycle to Mr. George. Instead, when Lifecycle's Chief Operating Officer called that number, he was put on hold for 20 minutes and then directed to contact Mr. Balkin.

45.    In the meantime, instead of endeavoring to return Lifecycle's WVO equipment, BBD continued to take more of it.  Without the ten days' advance notice that Lifecycle had requested.

46.    Specifically, in or about March 2025, it came to Lifecycle's attention that BBD had removed three more Lifecycle WVO containers without proper notice from the following locations (also along the I-95 corridor) in New Jersey and New York:

- Alfredos Pizzeria, 3205 NJ-88 Point Pleasant, New Jersey 08742;

- East Brunswick Seafood, 558 NJ-18, East Brunswick, New Jersey 08816; and

- Kapao by Wok Tov – Monsey, 455 NY-306, New York 10952.

25

47.    Unlike the first three containers (referenced in paragraph 37 above), no NDS or similar end of service notice had been issued to Lifecycle before BBD removed these Lifecycle containers.

48.    According to an April 2, 2025 letter from Mr. Balkin, BBD had transported Lifecycle's WVO containers to a location in Tonawanda, New York, and was holding them there. The April 2, 2025, letter further provided that Lifecycle's equipment could only be recovered "at the above-stated address," of 440 Sawyer Avenue, Tonawanda, New York 14150.

49.    For context, Tonawanda, New York, is on the Canadian border (between Buffalo and Niagara Falls), approximately 400 miles away and a 6-7 hour drive across numerous state and/or county lines from the relevant customer locations and Lifecycle's area of operations.

50.    Upon information and belief, instead of affording Lifecycle the opportunity to recover its equipment from BBD's Ewing Station and/or Modena Station locations, BBD elected to transport Lifecycle's WVO equipment hundreds of miles away, across state and county lines, and all the way up to the Canadian border to deprive Lifecycle of its WVO containers and render it impracticable for Lifecycle to retrieve and use equipment that are essential to Lifecycle's business operations.

51.    Moreover, it is relevant to note that, during this time frame, Lifecycle had filed a Motion to Transfer this above-captioned action from the Western District of New York to the Southern District of New York, which motion BBD opposed. *See* Dkt. Nos. 15, 23. One plausible explanation for BBD's scheme to haul Lifecycle's equipment to Tonawanda, New York is thus a failed attempt to establish venue over Lifecycle in New York's Western District.

52.    Upon information and belief, whether out of spite or in an underhanded attempt to manufacture venue in BBD's backyard, there is no non-nefarious explanation for such actions.

26

53.    As just one example, the following map illustrates the distance that BBD transported Lifecycle's WVO equipment from Great Wall Chinese (located in Pine Beach, New Jersey) to Tonawanda, New York (indicated by red pin near Hamilton, Toronto):



54.    On April 14, 2025, Lifecycle, through its counsel, sent another letter to Mr. Balkin, demanding the return of the—now six—Lifecycle WVO containers that BBD has taken. In its letter, Lifecycle also reiterated its demand for at least 10 business days advance notice so that it could have a reasonable opportunity to remove any further WVO containers, if warranted.

55.    On April 15, 2025, Mr. Balkin responded, telling Lifecycle's counsel that Mr. George would coordinate the return of Lifeccyle's WVO containers with Lifecycle directly.

56.     Upon information and belief, Mr. George did nothing to coordinate the return of the Lifeccyle's WVO containers for weeks. Instead, BBD continued to take Lifecycle's WVO equipment without notice.

57.     On or about April 3, 2025, Lifecycle's equipment located at Bella Napoli Pizzeria in Phoenixville, PA was reported stolen, presumably by BBD or its representatives.

58.     On May 13, 2025, Lifecycle's COO and BBD's COO (Mr. George) spoke by phone. During the call, Mr. George confirmed that BBD had, by that time, taken seven Lifecycle WVO containers. He also indicated that BBD would return all seven of the WVO containers to Lifecycle's Hamden, Connecticut, location the next day. But BBD did not return any of Lifecycle's WVO containers, to Hamden, Connecticut or otherwise.

59.     By July 14, 2025, two more months later, BBD had still not returned any of Lifecycle's WVO containers. On that day, Lifecycle, through its counsel, wrote again to Mr. Balkin, demanding BBD's return of Lifecycle's equipment.  Lifecycle also advised Mr. Balkin that, if Lifecycle's WVO containers were not promptly returned, Lifecycle would "have no choice but to amend [its] counter-Complaint to include the relevant claims, including conversion."

60.     Later that day, Mr. George sent a text message to Lifecycle's COO, in which he demanded that Lifecycle retrieve its WVO containers from BBD's impound yard in Tonawanda, New York, which (as set forth in paragraphs 48-53 above) is on the Canadian border, over 400 miles from the locations from which they were taken.

61.     Lifecyle reached out to Mr. George multiple times requesting a call to coordinate a reasonable return of the equipment but, in keeping with BBD's bad faith conduct, Mr. George ignored Lifecycle's communications.

62.     All the while, BBD continued to take additional Lifecycle WVO equipment without proper notice. Specifically, on or about July 24, 2025, Lifecycle's equipment provided for Café Brazil in Hartford, Connecticut was removed by BBD or its representatives. Notably, the owner of Café Brazil advised Lifecycle that they did not sign the NDS that had been sent to Lifecycle, nor did they recognize the signature on the NDS, purportedly authorizing the transfer of services.

63.     On July 29, 2025, Lifecycle (through counsel) once again wrote to Mr. Balkin, pointing out that "[i]t has been nearly five (5) months since we first raised this issue, and my client continues to get the runaround" from BBD. So Lifecycle again demanded that situation be "meaningfully rectified, through the prompt return of Lifecycle's equipment." Lifecycle received no response from BBD, whether through Mr. Balkin or otherwise, nor were any Lifecycle containers returned to any reasonable location.

64.     On or about October 19, 2025, BBD employees and/or representatives were caught on video taking yet another Lifecycle WVO container from a customer site, this time from Las Margaritas Mexican Restaurant, 2538 Welsh Road, Philadelphia, Pennsylvania 19152. This brought the total number of Lifecycle containers wrongfully removed by BBD to at least nine (9) containers.

65.     On November 27, 2025, counsel for Lifecycle sent BBD a final notice and demand letter for return of its WVO containers. In this final notice, Lifecycle emphasized that "the fact that Buffalo Biodiesel chose to transport Lifecycle's equipment roughly 400 miles—across state and multiple county lines—instead of returning the equipment to Lifecycle's Hamden, CT location as agreed is clear evidence of Buffalo Biodiesel's malintent." However, Lifecycle nevertheless extended to BBD on last chance to return the equipment, in "a final, good faith effort to resolve this matter outside of Court."

29

66.    BBD did not respond to Lifecycle's November 27, 2025 letter and, upon information and belief, neither BBD nor any of its agents made any attempt to return Lifecycle's stolen equipment.

## COUNTERCLAIM I:  FRAUDULENT INDUCEMENT[13]

67.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

68.    BBD agents and representatives have made intentional misrepresentations to potential customers to lock them into contracts with BBD.

69.    For example, BBD agents and representatives have told potential customers (1) that Green Earth was no longer in business and (2) that BBD had been authorized to take over the Green Earth accounts, when Lifecycle had acquired Green Earth (including its customer accounts) and was the provider in fact authorized to take over those accounts.

70.    BBD made these representations for the purpose of inducing clients to discontinue service with Lifecycle and enter into an exclusive service contracts with BBD.

71.    Upon information and belief, these legacy Green Earth customers (by then Lifecycle customers) entered into such exclusive service contracts with BBD because they relied on BBD's false representations that Lifecycle and/or Green Earth was no longer in business.

72.    In addition, BBD agents and representatives otherwise intentionally mislead their customers about their services and contracts, including material misstatements concerning BBD's promised services—including that BBD would respond to their calls for service, pick up their WVO upon request and when needed, and pay the agreed price for the WVO provided.

---

[13]    This Count incorporates claims for fraudulent inducement under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

73. Upon information and belief, had such customers not been misled by BBD agents and representatives, they would not have entered into the contracts with BBD.

74. With regard to the Green Earth accounts, had such customers not been misled by BBD agents and representatives, all or nearly all of those customers would have chosen to stay with Lifecycle.

75. As further proof that the actions of BBD's agents and representatives were authorized and intentional, when BBD was presented with the request and opportunity to clarify that Lifecycle was still in business and give its customers the opportunity to switch service providers, BBD declined to do so.

76. BBD's fraudulent actions have caused significant harm to Lifecycle, including, but not limited to the loss of revenue, damage to business reputation and brand, and legal fees and costs.

**COUNTERCLAIM II: TORTIOUS INTERFERENCE WITH CONTRACT[14]**

77. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

78. When Lifecycle acquired Green Earth, it acquired Green Earth's existing service contracts.

79. BBD knew, or should have known, that Lifecycle acquired Green Earth's contracts, because, among other things, Green Earth and/or Lifecycle containers remained on the customers premises and the customers continued to be serviced by Lifecycle after it acquired Green Earth.

---

[14] This Count incorporates a claim for tortious interference with contract under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

80.    Certainly, by its receipt of the August 28, 2024, letter from Lifecycle counsel, BBD was aware that Lifecycle had acquired the Green Earth accounts and that any statements to the contrary were false and misleading.

81.    Despite BBD's knowledge that Lifecycle had acquired Green Earth's service contracts, and continued to perform on and maintain those contracts, BBD first induced Lifecycle customers to breach these contracts through the use of fraud and misrepresentation and then made no effort to correct its interference with the contracts that Lifecycle had acquired.

82.    BBD's interference has caused significant harm to Lifecycle, including, but not limited to the loss of revenue, damage to business reputation and brand, and legal fees and costs.

## COUNTERCLAIM III: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS[15]

83.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

84.    To the extent that the Green Earth contracts with its customer accounts were not written or are otherwise found to not be "valid," the aforementioned conduct by BBD constitutes tortious interference with business relationships under applicable law.

85.    Further, BBD used illegal means, including fraud, to maliciously induce Lifecycle customers and other potential customers into unlawfully prohibitive contractual agreements.

86.    BBD then used improper means such as the threat of frivolous lawsuits to unlawfully prohibit customers from switching service providers.

---

[15]    This Count incorporates a claim for tortious interference with business relationships under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

87.    Such fraudulent actions constitute malicious intent to interfere with Lifecycle's business relationships.

88.    BBD's interference has caused significant harm to Lifecycle, including, but not limited to the loss of current and potential revenue, damage to business reputation and brand, and legal fees and costs.

### COUNTERCLAIM IV:  UNJUST ENRICHMENT[16]

89.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

90.    BBD entered into profitable, contractual relationships with Green Earth and/or Lifecycle customers by deceiving customers into forgoing their contractual relationship with Lifecycle and entering into exclusive, years-long contracts with BBD.

91.    Under false pretenses, BBD claimed to be acting under the authority of Lifecycle, thus benefiting from Lifecycle's reputation and name.

92.    Through such action, Lifecycle lost the benefit of their contractual agreements with customers, as well as a detriment to their name and reputation.

93.    Justice requires that BBD should not be able to retain the financial benefits of their fraudulent conduct, nor should they be able to continue to utilize Lifecycle's name and reputation in any action to solicit customers.

### COUNTERCLAIM V:  NY GBL § 349 VIOLATIONS

94.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

---

[16]    This Count incorporates a claim for unjust enrichment under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

33

95.     BBD used illegal means, including fraud, to induce Lifecycle customers and other potential customers into unlawfully prohibitive contractual agreements.

96.     Upon information and belief, Lifecycle customers would not have ended their service agreements with Lifecycle and signed service contracts with BBD if not for BBD's false and misleading statements that Lifecycle/Green Earth was no longer in operation and/or that BBD was authorized by Lifecycle to acquire these contracts.

97.     BBD's interference has caused significant harm to Lifecycle, including, but not limited to the loss of current and potential revenue, damage to business reputation and brand, and legal fees and costs.

## COUNTERCLAIM VI: NJ CONSUMER FRAUD ACT VIOLATIONS

98.     The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

99.     BBD used illegal means, including fraud, to induce Lifecycle customers and other potential customers into unlawfully prohibitive contractual agreements.

100.     Through BBD's fraudulent actions, Lifecycle an ascertainable loss that includes, but is not limited to, the number of Lifecycle customers who switched their service to BBD under these false pretenses.

101.     Upon information and belief, Lifecycle customers would not have ended their service agreements with Lifecycle and signed service contracts with BBD if not for BBD's false and misleading statements that Green Earth and/or Lifecycle was no longer in operation and/or that BBD was authorized by Lifecycle to acquire these contracts.

**COUNTERCLAIM VII:  CT UNFAIR TRADE PRACTICES ACT VIOLATIONS**

102.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

103.    BBD use of fraud, deception, and illegal means, to manipulate Lifecycle customers to sign into BBD service contracts offend public policy and established concepts of unfairness.

104.    BBD's threat of frivolous litigation for customers who wish to switch service providers likewise offends common law senses of morality and public policy.

105.    Upon information and belief, Lifecycle customers would not have ended their service agreements with Lifecycle and signed service contracts with BBD if not for BBD's false and misleading statements that Green Earth and/or Lifecycle was no longer in operation and/or that BBD was authorized by Lifecycle to acquire these contracts.

106.    BBD's interference has caused significant harm to Lifecycle, including, but not limited to the loss of current and potential revenue, damage to business reputation and brand, and legal fees and costs.

**COUNTERCLAIM VIII:  UNFAIR COMPETITION AND
UNLAWFUL RESTRAINT OF TRADE[17]**

107.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

108.    BBD's pattern of pressuring its customers into signing and staying locked into multi-year service contracts prevent small business owners from reasonably engaging with other opportunities, including an unfair and unlawful restriction of their ability to reasonably consider

---

[17]    This Count incorporates a claim for unfair competition and unlawful restraint of trade under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

and engage in agreements with any of BBD's competitors, including Lifecycle—even when BBD fails to uphold its end of the bargain by neglecting its customers' requests for service and payment for WVO, among other failures.

109.    There is no legitimate business interest that such restrictions and restraints are designed to protect; instead, they are designed to stamp out BBD's competition and limit consumer choice, resulting in a substantial reduction of competition in the WVO collection industry across the Northeast.

110.    BBD's deliberate actions to prevents its customers from reasonable opportunity to choose between and change WVO collection service providers and buyers are therefore in violation of federal and state regulations, including but not limited to the Sherman Antitrust Act, the Clayton Act, the Donnelly Act, and the New Jersey Antitrust Act.

111.    Such unfair competition and/or unlawful restraints on trade have prevented Lifecycle and other competitors from reasonable opportunity to enter markets in which BBD has historically operated, including but not limited to New York and New Jersey.

112.    Lifecycle is therefore entitled to damages treble to the amount that it has lost on account of BBD's unlawful actions.

### COUNTERCLAIM IX:  VEXATIOUS LITIGATION

113.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

114.    Lifecycle made reasonable offers and attempts to resolve the Parties' disputes, both in its own affirmative correspondence and in response to BBD's correspondence, prior to BBD's filing of its Complaint.  However, BBD elected to file its present lawsuit before making any effort to engage with counsel.

115.    Further, there are several allegations in BBD's Complaint that misrepresent counsel's interactions and/or ignore clarifications or corrections made clear by Lifecycle's counsel.

116.    For example, BBD claims that "Baker Donelson . . . later could not produce any physical proof of such contracts, admitting that they were all verbal and had no enforceable contractual beginning and end dates of their purported contractual agreements."  To be clear, BBD never made any request for such proof, nor was any admission ever made.

117.    In addition, BBD claims that "Baker Donelson then stated Lifecycle has removed hundreds of pieces of equipment from supplier locations," which is a false statement.

118.    These allegations and others are without merit and, upon information and belief, have been brought with the intent to vex Lifecycle and cause it to incur "excess costs, expenses, and attorneys' fees," in violation of 28 U.S. Code § 1927.

## COUNTERCLAIM X:  INJUNCTIVE RELIEF

119.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

120.    The facts as alleged, including the correspondence between counsel, establish a likelihood of success on the merits.

121.    Unless and until BBD's unlawful actions are restrained by the Court, Lifecycle will suffer irreparable harm for which there is no adequate remedy at law.

122.    Equity requires that BBD not be allowed to continue to unlawfully profit from Green Earth/ Lifecycle's brand, reputation, and existing services.

## COUNTERCLAIM XI:  CONVERSION[18]

123.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

124.    BBD exercised unauthorized dominion and control over Lifecycle's WVO containers, to the exclusion of Lifecycle's rights, by removing the equipment and hauling it 400 miles away to BBD's property at Tonawanda, New York.  BBD's conduct denied and excluded Lifecycle from exercising its rights and possession over its WVO containers.

125.    Lifecycle has at all relevant times owned and had a superior possessory right over the WVO containers misappropriated by BBD.

126.    BBD acted with intent, knowing that Lifecycle had a superior possessory interest in the WVO containers, but chose and intended, nonetheless, to take possession of Lifecycle's WVO containers. BBD intended to, and did, injure Lifecycle by taking Lifecycle's WVO containers without authorization.

127.    BBD did not have the authority from Lifecycle to take possession of its WVO containers. BBD's possession of the property was at all times unlawful.

128.    Lifecycle demanded the return of its WVO containers, numerous times, but BBD failed and refused to return Lifecycle's WVO containers, or to even make a good faith attempt to return the containers.

129.    BBD's actions caused harm to Lifecycle, including but not limited to rendering Lifecycle unable to use its WVO containers, loss of revenue, loss of customers, damage to the

---

[18]    This Count incorporates a claim for conversion under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

equipment through BBD's unauthorized handling, transportation, and storage of its WVO containers, and other damages to be proven at trial.

130.    BBD's conduct was intentional, wanton and malicious and was done with reckless, criminal indifference to the rights of Lifecycle, and with a high degree of moral culpability.

131.    Lifecycle is therefore entitled to compensatory and consequential damages proximately caused by BBD's intentional acts, including but not limited to lost customers, lost business and lost revenue caused by BBD's lack of use of its equipment, along with punitive damages, pre-judgment and post-judgment interest, costs and all other applicable damages.

## COUNTERCLAIM XII:  TRESPASS TO CHATTELS[19]

132.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

133.    Lifecycle owned and had a possessory right of interest in its WVO containers misappropriated by BBD.

134.    BBD physically interfered with Lifecycle's use of its WVO containers by taking possession of the containers, without justification and without Lifecycle's consent, and transporting them offsite to BBD's property approximately 400 miles away to Tonawanda, New York so that Lifecycle would be deprived of its use for a substantial time.

135.    Upon information and belief, in transporting Lifecycle's WVO containers to multiple locations and hundreds of miles, BBD also damaged the WVO containers.

136.    BBD did not have the authority from or consent of Lifecycle to take possession of its WVO containers.

---

[19]    This Count incorporates a claim for trespass to chattels under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

137. BBD acted with intent, knowing that Lifecycle owned and had a possessory interest in its WVO containers, and intending, nonetheless, to take possession of the equipment so that Lifecycle would be deprived of its use.

138. BBD's conduct was intentional, wanton and malicious and was done with criminal indifference to the rights of Lifecycle, and with a high degree of moral culpability.

139. BBD's actions caused harm to Lifecycle, including but not limited to rendering Lifecycle unable to use its WVO containers, loss of revenue, loss of customers, damage to the equipment through BBD's unauthorized handling and transportation of the equipment, and other damages to be proven at trial.

140. Lifecycle is therefore entitled to compensatory and consequential damages proximately caused by BBD's intentional acts, including but not limited to lost customers, lost business, and lost revenue caused by Lifecycle's lack of use of its equipment along with punitive damages, pre-judgment and post-judgment interest, costs and all other applicable damages.

## COUNTERCLAIM XIII:  REPLEVIN[20]

141. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

142. BBD currently possesses numerous Lifecycle WVO containers, which it unlawfully transported to and is storing at a BBD location on the Canadian border, so that it is impracticable for Lifecycle to retrieve the equipment.

143. Lifecycle has a possessory right to its WVO containers superior to that of BBD.

144. Lifecycle is entitled to the immediate possession of its WVO containers.

---

[20] This Count incorporates a claim for replevin under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

145.    Lifecycle demanded the return of its WVO containers numerous times, but BBD has failed and refused to return the equipment, or to even make a good faith attempt to return the containers.

146.    Lifecycle is therefore entitled to an order directing BBD to immediately return Lifecycle's WVO containers to Lifecycle.

### COUNTERCLAIM XIV:  UNJUST ENRICHMENT (WVO CONTAINERS)[21]

147.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if completely set forth.

148.    BBD dispossessed Lifecycle of its WVO containers, hauling them to a remote location on the Canadian border, so that Lifecycle could not retrieve or use the containers, which are essential to its business.

149.    As a result of BBD's conduct, BBD has retained the value of Lifecycle's WVO containers and gained an unfair competitive advantage over Lifecycle.

150.    BBD retained Lifecycle's WVO containers to Lifecycle's detriment as Lifecycle was deprived of the use of its containers, which are essential to its business.

151.    BBD'S retention of Lifecycle's WVO containers violates the fundamental principles of equity, justice, and good conscience.

152.    BBD's conduct was intentional, wanton, and malicious and was done with reckless, criminal indifference to the rights of Lifecycle and with a high degree of moral culpability. Such conduct is part and parcel of BBD's ongoing and overarching nefarious anti-competitive conduct.

---

[21]    This Count incorporates a claim for unjust enrichment under the laws of various states (including New York, New Jersey, Connecticut, and Pennsylvania), as will prove applicable through discovery.

153.    No contract governs the subject matter of BBD's misappropriation and retention of Lifecycle's WVO containers.

154.    Lifecycle is therefore entitled to compensatory and consequential damages proximately caused by BBD's intentional acts, including but not limited to lost customers, lost business, and lost revenue caused by Lifecycle's lack of use of its WVO containers along with punitive damages, pre-judgment and post-judgment interest, costs and all other applicable damages

### REQUEST FOR RELIEF

WHEREFORE, Defendant/Counter Plaintiff, Lifecycle Renewables, Inc., demands the following:

a.    An Order prohibiting Buffalo Biodiesel, Inc. from asserting any further fraudulent, defamatory, misleading, or otherwise damaging statements in an attempt to secure further contracts with Lifecycle's existing customers (including the customers of any entity that Lifecycle has or will acquire) or potential customers;

b.    An Order requiring that Buffalo Biodiesel issue written retractions to each of Lifecycle's impacted customers and potential customers clarifying (to the extent appropriate) that (a) Lifecycle is still in business and its agreements with Lifecycle (including its acquired service providers, such as Green Earth) remain valid; (b) Buffalo Biodiesel is not and has never been associated with Lifecycle or any of its acquired businesses (including Green Earth) in any way; and (c) each customer is entitled to cancel its contract with Buffalo Biodiesel, without penalty, and re-engage with an alternate service provider, including Lifecycle;

c.    An Order prohibiting Buffalo Biodiesel from (a) engaging in fraudulent or otherwise materially misleading tactics in order to lock potential customers and

WVO suppliers into long-term, exclusive contracts; (b) using or threatening vexatious litigation against its suppliers and/or its competitors; and (c) any other tactics employed by Buffalo Biodiesel that so limit and restrict fair competition in the WVO collection industry;

d.  An Order requiring Buffalo Biodiesel to return all Lifecycle WVO equipment to a Lifecycle operational hub.

e.  A Judgment in favor of Lifecycle against Buffalo Biodiesel for compensatory damages caused by Buffalo Biodiesel's conduct in an amount to be proven at trial;

f.  A Judgment in favor of Lifecycle against Buffalo Biodiesel for statutory damages, including treble damages, for its intentional efforts to unfairly restrain trade and competition;

g.  A Judgment in favor of Lifecycle against Buffalo Biodiesel for punitive damages and/or civil penalties;

h.  An Award of Lifecycle's costs and expenses, including attorneys' fees, against Buffalo Biodiesel; and

i.  Any other relief that the Court deems just and proper.


Dated: February 20, 2026

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

By: *Lindsay E. Ray*
Lindsay E. Ray (N.Y. Reg. No. 5240171)
Amearah Elsamadicy (*pro hac vice*, T.N. BPR No. 042318)
1600 West End Avenue, Ste. #2000
Nashville, Tennessee 37203

43

Tel. (615) 726-7318
lray@bakerdonelson.com
aelsamadicy@bakerdonelson.com

*- and –*

Michael A. Brodlieb (N.Y. Reg. No. 5440516)
**BAKER, DONELSON, BEARMAN,
     CALDWELL & BERKOWITZ, P.C.**
281 Witherspoon Street, 3rd Floor
Princeton, NJ  088540
Tel. (609) 490-4857
mbrodlieb@bakerdonelson.com

*Attorneys for Defendant/Counterclaim-Plaintiff
Lifecycle Renewables, Inc.*

44