# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUFFALO BIODIESEL, INC.,

Plaintiff,

vs.

LIFECYCLE RENEWABLES, INC.,

Defendant.

---

**AFFIDAVIT**

Case No.: 25-CV-08905 (ER)

STATE OF NEW YORK   )

COUNTY OF ERIE      ) ss:

I, SUMIT MAJUMDAR., being duly sworn, depose and state as follows:

1. I am the Chief Executive Officer of Buffalo Biodiesel, Inc. ("Buffalo Biodiesel" or "BBD"). I make this affidavit based upon my personal knowledge.

2. As Chief Executive Officer, I am responsible for the overall management and direction of Buffalo Biodiesel and am involved in significant legal decisions affecting the company.

3. I have reviewed Defendant Lifecycle Renewables, Inc.'s June 23, 2026 letter requesting that Buffalo Biodiesel be required to retain outside counsel and seeking to preclude Buffalo Biodiesel's in-house counsel, Jeremiah Lenihan, from representing the company in this action.

4. I submit this affidavit to explain Buffalo Biodiesel's intentions concerning legal representation and to address Defendant's assertions regarding the Protective Order entered in this action.

1

5.  In the fall of 2025, Buffalo Biodiesel had retained Geron Legal Advisors LLC to represent the Company concerning the instant action venued in the Southern District of New York.

6.  For various reasons, I ultimately made the decision to terminate the services of Geron Legal Advisors LLC and advised then-General Counsel, Patrick Balkin, Esq. to begin handling a transition wherein in-house counsel would be responsible for litigating this action on behalf of Buffalo Biodiesel. These conversations took place in late April through mid-May 2026.

7.  On April 27, 2026, Buffalo Biodiesel hired Jeremiah Lenihan, Esq. in substantial part because of his extensive litigation experience, including his experience as an Assistant United States Attorney and other government litigation positions. Mr. Lenihan was specifically hired to manage complex litigation matters, regulatory matters, compliance matters, investigations, and related legal issues on behalf of the company.

8.  Prior to the filing of the stipulated Protective Order (Doc. No. 57), I was not informed that the Protective Order negotiated by prior outside counsel contained an Outside Attorneys' Eyes Only ("OAEO") designation that could later be used by Defendant as a basis to argue that Buffalo Biodiesel must retain outside counsel and exclude in-house litigation counsel from participation in this case.

9.  The Protective Order was executed by prior outside counsel on or about April 30, 2026. I was not consulted regarding any provision that would purportedly prevent Buffalo Biodiesel's in-house litigation counsel from handling this matter or require Buffalo Biodiesel to retain outside counsel indefinitely.

10.  Had such a consequence been brought to my attention, I would have objected because it had been Buffalo Biodiesel's intention to develop and utilize in-house litigation

2

capabilities to manage its commercial litigation matters whenever appropriate, such as in this action.

11.    As Federal Litigation Counsel, Mr. Lenihan's responsibilities are legal in nature. Mr. Lenihan is not responsible for establishing supplier pricing, customer pricing, marketing strategy, sales strategy, branding decisions, licensing decisions, business development decisions, or other competitive commercial decisionmaking activities.

12.    Mr. Lenihan does not direct Buffalo Biodiesel's sales personnel, marketing personnel, pricing personnel, or business-development personnel.

13.    Defendant's assertion that this action requires outside counsel because it involves competitors is misplaced.  This lawsuit concerns straightforward business tort claims, including allegations of tortious interference with contract, conversion, unjust enrichment, fraud, and related claims arising from specific interactions with suppliers and alleged interference with contractual relationships.

14.    This action does not involve patent claims, trade secret claims, product design issues, research and development information, or other highly technical subject matter that would ordinarily necessitate the continued involvement of outside counsel.

15.    Buffalo Biodiesel believes that requiring separate outside counsel would substantially increase litigation costs, create inefficiencies, complicate decisionmaking, and interfere with Buffalo Biodiesel's ability to litigate this matter through counsel of its choosing.

16.    Buffalo Biodiesel has every intention of complying with all Protective Order obligations and any directives issued by this Court concerning confidential information.

17.    If the Court determines that additional safeguards are appropriate, Buffalo Biodiesel is willing to implement reasonable procedures, including walling off in-house legal

counsel, to ensure that any information designated under the Protective Order is used solely for purposes of this litigation and is not disclosed to personnel involved in competitive business functions.

18.    Based upon my knowledge of Mr. Lenihan's duties and responsibilities, I do not believe that his participation as counsel in this action presents any risk of misuse of competitively sensitive information.

19.    It is also my understanding that Mr. Lenihan, who spent 15 years as a state and federal prosecutor, has routinely litigated complex disputes through the compliance of protective orders. I have full confidence in Mr. Lenihan's integrity and ability to follow the parameters of a modified protective order.

20.    Buffalo Biodiesel respectfully requests that the Court permit Mr. Lenihan to continue serving as counsel for Buffalo Biodiesel in this matter.

_____

Sumit Majumdar

Sworn to before me this 29th day of June , 2026

_____

Notary Public

JEREMY FRANK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01FR0038610
Qualified in Erie County
My Commission Expires: June 20, 2029

4