UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUFFALO BIODIESEL, INC.,

                        Plaintiff,

    vs.                                              **AFFIDAVIT**

                                                     Case No.:  25-CV-08905 (ER)

LIFECYCLE RENEWABLES, INC.,

                        Defendant.

---

STATE OF NEW YORK        )

COUNTY OF ERIE           ) ss:


I, FRANK V. BALON, Esq., being duly sworn, depose and state as follows:

1.      I am the President and Chief Legal Officer ("CLO") of Buffalo Biodiesel, Inc. ("Buffalo Biodiesel" or "BBD"). I make this affidavit based upon my personal knowledge.

2.      I submit this Affidavit in support of BBD's motion to modify the protective order, and specifically, to remove the "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY ("OAEO")" designation in the Protective Order and allow the Court to impose appropriate safeguards it deems necessary.

3.      As President and CLO, I am responsible for the overall management and direction of Buffalo Biodiesel and am involved in significant legal decisions affecting the company, including decisions related to this litigation.

4.      I assumed these roles on June 1, 2026.

1

5.      I previously served as Co-President, CLO, and Board Director for Steuben Foods, Inc., located in Elma, New York, where I oversaw the Company's operations, growth, and management.

6.      Of significance, I oversaw the legal department at Steuben Foods, where I directed corporate, Intellectual Property, and litigation functions.

7.      This work included overseeing licensing agreements, patents, trade secrets, and proprietary information that, at times, resulted in litigation.

8.      I received my J.D. from the University at Buffalo in 2002, and I began my legal career at various law firms, including Weil, Gotshal & Manges, in New York City, Webster Szanyi LLP in Buffalo, and Hiscock & Barclay LLP (now Barclay Damon LLP) in Buffalo.

9.      The majority of my legal career has been spent in-house with Steuben Foods, beginning as in-house counsel and ultimately becoming Co-President and the CLO.

10.     It is BBD's intention to litigate this matter through its in-house legal department, led by our Federal Litigation Counsel.

11.     I am familiar with this litigation and understand that BBD filed a federal lawsuit against Lifecycle alleging tortious interference with its contracts.

12.     At its core, this is a commercial dispute between competitors in the waste vegetable oil ("WVO") industry.

13.     Buffalo Biodiesel alleges that Lifecycle Renewables engaged in the theft and conversion of WVO from BBD's collection containers, tortiously interfered with BBD's supplier contracts and business relationships, and made false and misleading representations to suppliers to induce them to terminate their contractual relationships with Buffalo Biodiesel.

14. Lifecycle has denied those allegations and has asserted counterclaims alleging, among other things, that BBD engaged in similar competitive misconduct, including claims relating to interference with business relationships, conversion, and related commercial torts.

15. The litigation therefore concerns competing factual allegations regarding the parties' business practices and competitive conduct in the marketplace.

16. During my legal career, I have overseen and managed numerous complex commercial litigations, including matters involving trade secrets, patent infringement, proprietary technology, confidential research and development, and other highly sensitive intellectual property where Attorneys' Eyes Only designations may serve an important purpose.

17. This case is fundamentally different, as does not involve the disclosure of source code, patented technology, confidential formulas, engineering specifications, or other uniquely sensitive proprietary information that would justify a blanket OAEO designation.

18. Rather, this case involves routine commercial claims between business competitors concerning alleged contractual interference, conversion, and related business torts.

19. While appropriate protections for genuinely confidential business information are both expected and necessary, the sweeping OAEO restrictions presently in place unnecessarily impede Buffalo Biodiesel's ability to meaningfully participate in its own defense and prosecution of its claims.

20. Requiring the company to retain and rely on separate outside counsel to review the most significant materials in the case would substantially increase our litigation costs, create inefficiency, and interfere with the company's ability to litigate this matter through counsel of its choosing.

21.    As set forth in Sumit Majumdar's Affidavit, in 2025, Buffalo Biodiesel had retained Geron Legal Advisors LLC to represent the Company concerning the instant action venued in the Southern District of New York.

22.    According to Mr. Majumdar, he made the decision to terminate the services of Geron Legal Advisors LLC and advised then-General Counsel, Patrick Balkin, Esq. to begin handling a transition wherein in-house counsel would be responsible for litigating this action on behalf of Buffalo Biodiesel.  These conversations took place in late April through mid-May 2026. Mr. Majumdar explained the Company's stated position in his Affidavit.

23.    On April 27, 2026, Buffalo Biodiesel hired Jeremiah Lenihan, Esq. in substantial part because of his extensive litigation experience, including his experience as an Assistant United States Attorney and other government litigation positions.  Mr. Lenihan was specifically hired to manage complex litigation matters, regulatory matters, compliance matters, investigations, and related legal issues on behalf of the company.

24.    It is BBD's position that Mr. Lenihan, along with another assigned attorney, and a paralegal maintain the ability to litigate this instant matter without the need for outside counsel.

25.    The OAEO designation, as Lifecycle seeks to apply it, prevents BBD's in-house litigation counsel from reviewing the materials that are central to this dispute.

26.    Because our in-house counsel is seeking to lead this litigation, that restriction directly impairs the company's ability to make informed decisions about the case.

27.    As President and CLO, I rely on our in-house litigation counsel to advise me on the strengths and weaknesses of the claims and counterclaims, on litigation strategy, and on the company's exposure.

28. If in-house counsel cannot see the designated materials, counsel cannot fully advise me, and I in turn cannot meaningfully weigh in on case decisions or shape the company's strategic response.

29. The practical effect is to sideline the company's own management from decisions about its own case.

30. Maintaining the designation therefore does not merely inconvenience the company; it prevents Buffalo Biodiesel from mounting a reasonable and informed defense through the counsel and management team it has chosen to entrust with this matter.

31. Lifecycle has asserted counterclaims that seek damages tied to specific restaurants and customers that Lifecycle contends were affected by BBD's conduct.

32. Under the OAEO designation as Lifecycle applies it, no one from BBD's in-house counsel can access the names of the restaurants and customers on which those counterclaims and their asserted damages are based.

33. Without knowing which restaurants and customers Lifecycle contends were affected, Buffalo Biodiesel cannot investigate the underlying facts, cannot evaluate the accuracy of Lifecycle's damages assertions, and cannot prepare a reasonable defense to the counterclaims.

34. This is not a matter of convenience, as it goes to the company's basic ability to defend itself against the claims asserted against it.

35. I understand that Buffalo Biodiesel has proposed, and is prepared to implement, specific safeguards to protect any sensitive materials produced in this case.

36. I understand these measures to include: locking down the work computer of our in-house litigation counsel; restricting access to counsel's internal drive to counsel and the company's information-technology personnel only; hosting and reviewing all OAEO-designated materials on

Relativity, a closed-access third-party e-discovery platform; and limiting the working team with access to our Federal Litigation Counsel, one additional in-house attorney, and a paralegal.

37. I further understand that our in-house litigation counsel confirmed with the company's information-technology personnel that access to counsel's drive can be restricted in this manner and that the materials can be maintained securely on the closed-access platform.

38. BBD remains at a practical disadvantage because it is unclear precisely what information Lifecycle seeks to shield from management through the existing OAEO designation.

39. To the extent Lifecycle's concern is that Buffalo Biodiesel's management might learn the identity of Lifecycle's specific suppliers or customers, or other competitively sensitive information that is not already known to Buffalo Biodiesel through ordinary marketplace competition, I am willing to implement reasonable and tailored safeguards to address those concerns.

40. For example, I will instruct counsel that they need not disclose to me, or to other designated members of Buffalo Biodiesel's management, the identities of Lifecycle's specific suppliers or customers produced solely through discovery.

41. Likewise, if Lifecycle identifies other discrete categories of genuinely sensitive competitive information, I am willing to implement appropriate ethical walls or other reasonable protocols that would prevent such information from being shared with management while still permitting me to review and assist counsel with the vast majority of discovery necessary to prosecute Buffalo Biodiesel's claims and defend against Lifecycle's counterclaims.

42. Such targeted protections would adequately safeguard any legitimate competitive interests without depriving Buffalo Biodiesel of the meaningful ability to participate in its own litigation.

43.    BBD is committed to complying fully with the Protective Order and with any additional safeguards the Court directs, and to ensuring that any designated materials are used solely for purposes of this litigation and are not shared with personnel involved in the company's competitive business functions.

44.    For these reasons, Buffalo Biodiesel respectfully requests that the Court modify the Protective Order to permit its designated in-house litigation counsel to access materials designated OAEO, subject to the safeguards described above.

_____
Frank V. Balon, Esq.

Sworn to before me this 4th day of August, 2026

_____

Notary Public

ARMAAN SINGH NATT
Notary Public. State of New York
Reg. No. 02NA0042778
Qualified in Monroe County
Commission Expires 10/15/2029